196 N.J. Super. 76 (1984)
481 A.2d 585
VERA SQUITIERI, PLAINTIFF,
v.
ALFONSO VINCENT SQUITIERI A/K/A ALAN SQUITIERI, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided May 31, 1984.
*78 David A. Pressler for plaintiff (Okin, Pressler and Shapiro, attorneys).
Leon J. Sokol for defendant (Greenstone & Sokol, attorneys).
KRAFTE, J.S.C.

PREFACE
In this ever-increasing era of complete interstate mobility, multi-state forums for divorce are becoming more common, and the problems emanating therefrom more involved. It has long been recognized that two states may have the proper, absolute jurisdiction to render a divorce in a given marriage. The greater the wealth, the more extensive the assets, the more far-flung the property, the more complex the solution becomes. *79 A point is reached in a given marriage where divorce becomes recognized, inevitable and, to the parties, desirable. Although neither party cares which state grants the actual divorce, both parties are highly concerned as to which state considers and decides the financial issues. In many instances dissolution actions are commenced in two states. Courts are called upon to determine jurisdiction. That point has been reached in this matter.

FACTS
History becomes important and significant. In this matter, the parties were married on August 31, 1961 in Reno, Nevada. During the first-13 years of marriage, plaintiff and defendant lived in New York, Florida, Kentucky and New Jersey. In 1975, the marital home was built in Saddle River, New Jersey, where the parties and their children lived together until April 1980, when defendant left for Florida, plaintiff and the children remaining.
Sandy was born October 10, 1963, the first child of the marriage. Christopher, plaintiff's child by a prior marriage and adopted by defendant, was born December 15, 1959. Although both have reached the age of majority, neither is emancipated. Presently Sandy resides with plaintiff, and Christopher, since September 1983, resides with defendant in Florida.
The nature and extent of plaintiff's contact with the State of Florida becomes crucial.
Plaintiff claims she was only in Florida for about four days in 1979 or 1980 when defendant opened a shopping center. On July 9, 1979 plaintiff and defendant executed a mortgage for a condominium in Florida, which defendant claims to be the marital home. The title (deed) is in defendant's sole name and plaintiff claims that, in fact, she has never seen this residence let alone having lived there for a week in 1979 as claimed by defendant.
*80 It appears from the pleadings that from 1972 to 1974 plaintiff and defendant did reside, at times, in Hollywood and Palm Beach, Florida, as well as  apparently  in other states, all prior to purchasing the Saddle River residence.
On or about December 14, 1983 defendant filed an action for divorce in the Circuit Court of Florida, 8th Judicial Circuit, in and for Alachua County, Florida. The Florida court found the defendant to be a legal bona fide resident of Florida.
On January 5, 1984 plaintiff was personally served with a summons and petition for dissolution of marriage, but plaintiff made no formal appearance with relation thereto.
On January 18, 1984 plaintiff filed suit for divorce in New Jersey, and obtained an order to show cause which temporarily restrained defendant from proceeding with his Florida action.
On or about January 23, 1984 the Florida court received a letter from plaintiff's attorneys transmitting documents, which the Florida court ruled did not constitute participation.
On January 26, 1984, defendant was served in Florida with the New Jersey pleadings.
On February 14, 1984, plaintiff obtained an additional order to show cause which continued the restraints of the January 18, 1984 order, and scheduled a return date for February 17, 1984.
On February 16, 1984, in spite of and in the face of New Jersey restraints defendant proceeded in Florida and obtained an "Order on Motion for Determination of General Appearance, Default and Awarding Temporary Alimony."
On February 17, 1984, the adjourned return date of the order to show cause, legal arguments were heard, at which time the court also considered defendant's motion to dismiss plaintiff's New Jersey complaint and to dissolve all restraints.
On March 5, 1984, this court signed an order requiring plaintiff to submit a medical affidavit, with defendant reserving the right to depose plaintiff's treating physician all on the question of special equities. The restraints contained in the *81 January 18, 1984 order were continued, and upon receipt and consideration of all medical information, the court was to rule. Plaintiff submitted her medical affidavit pursuant to this court's order.

LAW
This court is now called upon to make the following determinations:
1. Is New Jersey required to afford full faith and credit pursuant to U.S. Const., Art. IV, § 1, to the order of the courts of Florida, i.e., does Florida have such in personam jurisdiction over plaintiff as to make support (whether alimony or child support) and equitable distribution rulings?
2. If so, are there special equities which would cause this court to assume jurisdiction regardless?
3. Does New Jersey have in personam jurisdiction of the defendant which would permit it to enter support and equitable distribution rulings?
In determining jurisdiction, this court must first examine the full faith and credit clause of the United States Constitution. Ibid.
Full Faith and Credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other state, and the Congress may by general laws prescribe the manner in which such Acts, Records and Proceedings shall be proved and the effect thereof.
In Williams v. North Carolina, 325 U.S. 226, 278, 65 S.Ct. 1092, 1118, 89 L.Ed. 1577, 1608 (1945), the United States Supreme Court established the right of a party to a marriage to dissolve the res of the marriage in a foreign jurisdiction so long as that party has established a bona fide domicile in the foreign state.
In this matter it is clear that the defendant has established his domicile in the State of Florida and, therefore, *82 the Florida Court has clear in rem jurisdiction to dissolve the marriage.
Justice Frankfurter, in Williams held that:
[T]he decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicile is a jurisdictional fact. To permit the necessary finding of domicile by one State to foreclose all States in the protection of their social institutions would be intolerable. [325 U.S. at 232, 65 S.Ct. at 1096.]
Therefore, the Florida proceeding has time priority in becoming the legal and proper forum to grant the actual divorce and defendant should be free from "vexation and subsequent litigation over the same subject matter" in New Jersey or elsewhere. Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 930 (3 Cir.1941).
However, as stated above, the parties are not concerned over which state actually dissolves the marriage, but rather which state addresses the financial issues. The full faith and credit clause obligates this State to recognize the Florida priority for divorce if factually granted prior to consideration in New Jersey, both states having unquestioned in rem jurisdiction. New Jersey will do so.
The question now to be determined by this court is whether Florida also has in personam jurisdiction over plaintiff to enable it to determine support and equitable distribution to the exclusion of New Jersey. If not, and given a Florida dissolution judgment, our statutes permit our courts to determine financial aspects if in personam jurisdiction of both parties is present. N.J.S.A. 2A:34-23.
This court is now faced with a determination by the Florida court, dated February 16, 1984, that "This Court has Jurisdiction of the Parties and the Subject Matter of this Action." Florida also made rulings consonant with its determination of in personam jurisdiction over plaintiff.
Is Florida, i.e., defendant, entitled to compel recognition of this determination by New Jersey? We most respectfully think not.
*83 Pursuant to Williams v. North Carolina, supra, this court has the authority to examine and determine whether Florida's finding is jurisdictionally sound.
The Restatement of Conflict of Laws admonishes that as between the several states of the United States, the full faith and credit clause requires the court of the state where recognition is sought (here, New Jersey) to look to the local law of the state of rendition (here, Florida) to determine whether or not the judicial proceedings or ruling is void for lack of competence. Restatement, Conflict of Laws 2d, § 105 at 318 (1978).
As late as December 13, 1983, in Philadelphia v. Wheeler, 192 N.J. Super. 616 (Law Div. 1983), the City of Philadelphia sought to enforce a Pennsylvania judgment against the defendant. The court held:
When suit is brought on a foreign judgment the Full Faith and Credit Clause permits inquiry only into the jurisdiction of the foreign court; the existence of the judgment is conclusive as to the validity of all other aspects of the proceedings which led to its entry. Zieper v. Zieper, 14 N.J. 551, 566-567 [103 A.2d 366] (1954).
By virtue of the clause, jurisdiction over the subject matter and the person, however, is presumed; the burden of proving the absence of that jurisdiction is upon she who challenges the judgment. Ibid.; Esenwein v. Commonwealth, 325 U.S. 279, 280-281; 65 S.Ct. 1118, 1119; 89 L.Ed. 1608, 1610 (1945); Williams v. North Carolina, 325 U.S. 226, 235; 65 S.Ct. 1092, 1097; 89 L.Ed. 1577 (1945); Adam v. Saenger, 303 U.S. 59, 62; 58 S.Ct. 454, 456; 82 L.Ed. 649 (1938). [at 619-620]
Plaintiff herein directly challenges the in personam jurisdiction of the Florida Court. Williams v. North Carolina, supra affords that absolute right to her.
A judgment in one state is conclusive upon the merits in every other state, but only if the court of the first state had the power to pass on the merits, had the jurisdiction, that is, to render judgment. [325 U.S. at 228]
If the Florida determination of February 16, 1984 is to be accorded full faith and credit in the courts of her sister states, it is essential that Florida have the proper jurisdiction. We, therefore, must next examine into the affirmative in personam jurisdictional finding of Florida. Since the plaintiff (defendant in the Florida action) was personally served with *84 Florida process in New Jersey, jurisdiction must perforce be obtained by virtue of Florida's so called "long arm" statute entitled "Acts subjecting persons to jurisdiction of courts of state." Fla. Stat. c. 48.193(1)(e). As a matter of fact, the Florida court specifically based its jurisdictional finding thereon.
Said statute reads as follows:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
(e) With respect to proceedings for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of the action, or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not.
The Florida "long arm" statute (§ (1)(e)) clearly seeks to delineate requirements for in personam actions, i.e., "Proceedings for alimony, child support, or division of property." Several prerequisites are set forth:
1. If the person maintains a matrimonial domicile in Florida at the time of the commencement of the action.
2. If the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not.
The facts upon which Florida relies to base its findings of in personam jurisdiction over plaintiff must now be analyzed in conjunction with that state's "long arm" statute. The following are the factors found, ex parte, by the Florida court:
1. A mortgage loan was signed by plaintiff, recorded July 9, 1979, for a Gainesville condominium.
2. Plaintiff resided in the condominium for one week in 1979, and then returned to New Jersey.
3. The parties previously resided in Florida during 1972-1974.
4. Since April 1980, the plaintiff has committed acts leading to an irretrievable break in the bonds of matrimony.
In the instant matter, plaintiff admits items 1 and 3, while denying 2 and 4.
*85 The Florida statute requires, first and foremost, that the nonresident maintain a matrimonial domicile in that state at the time of the commencement of the action. If this court concedes the truth of defendant's claim that the parties resided in the Gainesville condominium for "approximately one week" in 1979, we are faced with the uncontroverted fact of both plaintiff and defendant residing in Saddle River, New Jersey, as the marital home from 1975 to April 1980, when defendant left New Jersey for Florida on a permanent basis. Defendant, in paragraph 3 of his Florida petition for dissolution of marriage, states that they were married on August 31, 1961, in Nevada "and thereafter cohabited as husband and wife in various jurisdictions until on or about April 1980," thereby confirming plaintiff's position.
Further, in paragraph 4(a) of his petition, defendant states that the condominium in Gainesville was purchased "on or before February 22, 1978 (actual date of deed was July 9, 1979). Subsequent to that date, the wife has persistently failed and refused to reside in the marital residence."
Again, in paragraphs 8 and 9 of his petition, defendant refers to a "final separation ... on or about April, 1980."
Paragraph 4(c) of the petition sets forth the grounds for divorce (irretrievable break) commencing April 1980.
In defendant's affidavit of January 26, 1984, filed in this cause, he states, in paragraph 4:
My wife and I closed a loan on the marital condominium located at 2522 S.W. 14th Drive, Gainesville, Florida, on July 9, 1979, and have continuously owned that property as Tenants by the Entireties since that date.
It is to be observed that defendant, in said paragraph, never alleged that the plaintiff ever resided there.
It is further to be observed that the deed to this very condominium does not indicate entirety ownership, but rather sole ownership in defendant.
It is abundantly clear, and defendant does not deny, that for a not inconsiderable time prior to April 1980 the parties maintained *86 their matrimonial domicile in Saddle River, New Jersey. Even if this court grants full credence to paragraph 4(a) of defendant's petition, it is clear that what defendant is attempting to do is to "tack" on periods and absolutely ignore his New Jersey residence with defendant, and claim acts of prior years to establish in personam jurisdiction under the Florida "long arm" statute. Clearly, this cannot be done. The mere fact that at some time prior to the ultimate separation of the parties in New Jersey, they happened to reside in Florida cannot, by any stretch of the jurisdictional imagination, be deemed a solid foundation for acquisition of "long arm" jurisdiction. To rule otherwise would forever afford "long arm" jurisdictional control over every nonresident who happened at one time to reside in Florida.
Even granting a temporary separation in Florida in 1979, the parties did not, by their very actions in returning to their admitted marital home in Saddle River, New Jersey, where they continued to reside together as husband and wife until defendant left in April 1980, to go to Florida, establish and maintain a matrimonial domicile in Florida.
Clearly, plaintiff did not reside in Florida in "a matrimonial domicile" at the time this cause of action arose, but did reside in New Jersey.
The second phrase of the Florida statute states that that state acquires in personam jurisdiction if the defendant (in Florida) "resided in `that' State preceding the commencement of the action."
Mrs. Squitieri admittedly resided in Florida in the early 1970's. This is 1984. She is not forever bound to the State of Florida, but is, and has been since 1975, a bona fide resident of the State of New Jersey.
The mere fortuitous residence in Florida, more than ten years before defendant instituted this suit, does not grant Florida in personam jurisdiction. Defendant herein must pursue his cause of action with reasonable diligence if, indeed, a cause of *87 action arose in Florida prior to the parties move to New Jersey in 1975. The parties terminated their matrimonial relationship with the State of Florida in 1975.
A literal reading of this clause would furnish continuing in personam jurisdiction in the Florida courts during the entire joint lives of the parties as long as defendant (in a Florida action) Ever resided in Florida. Due process cannot be stretched to this point.
Defendant cannot pick and choose his forum for resolution of the financial aspects of this marriage. In a court of conscience, a party cannot forevermore dangle jurisdiction over a spouse's head, saving its fall until the propitious moment is found.
Having found that the State of Florida does not have in personam jurisdiction of plaintiff, this court does not have to address the question of special equities.
If New Jersey is to decide the financial issues between the parties, this court must find in personam jurisdiction over the nonresident spouse.
As a matter of tradition in this State, the rules governing service of process in divorce actions have always imposed requirements consistent with due process. Under the "long arm" provision of R. 4:4-4(e) and R. 4:4-5(a), and consistent with such due process, this court has obtained in personam jurisdiction over the defendant.
It has not been disputed that since International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945),
due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he had certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'
[326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.]
The New Jersey court in Roland v. Modell's Shoppers World of Bergen County, 92 N.J. Super. 1, 6 (App.Div. 1966) enunciated this same view.
*88 While it has been determined that defendant is domiciled in Florida, his ties to the State of New Jersey, are not merely minimal, but major, extensive and continuing.
At this point it will be helpful to summarize defendant's contacts with New Jersey:
1. Defendant and plaintiff have jointly owned the marital home in Saddle River, N.J. since 1974.
2. Defendant registered to vote in Bergen County, New Jersey, on May 5, 1980.
3. Defendant maintains a current, valid New Jersey Driver's License # S371-2002-00003132.
4. Defendant maintained his business of Squitieri Associates, Continental Plaza II, 411 Hackensack Avenue, Hackensack, N.J. 07601, until he cancelled his lease in December 1983.
The following are bills submitted to defendant alone or with plaintiff:
(1) Mortgage on the marital home to defendant, Mortgage # 5917505. Payment due March 1, 1984. Sent to defendant's business address in Hackensack, N.J. from First Federal Bank.
(2) Mortgage loan coupon from Carteret Savings & Loan in Newark, N.J., sent to plaintiff and defendant at the business address in Hackensack, N.J. Payment due March 1, 1984.
(3) New Jersey Bell to defendant, in care of Squitieri Associates in Hackensack, N.J., dated February 8, 1984, and stamped, "received February 21, 1984."
(4) Ramsey Oil Co. of Ramsey, N.J., dated February 14, 1984. Mailed to Squitieri Associates in Hackensack, N.J., for a delivery to the marital home on February 13, 1984.
(5) Two bills from St. Luke's Episcopal Hospital of Houston, Texas, mailed to defendant at the marital home for services performed on his son from January 23, 1984 (statement dated January 23, 1984).
*89 (6) Dental work performed. Bill submitted to defendant in care of business address in Hackensack, N.J. Services performed from January 18, 1983 to February 1, 1984.
(7) Miller's of Wyckoff, N.J., bill mailed to defendant in care of his business address in Hackensack, N.J. Billing date January 26, 1984.
(8) Orr Electric, dated December 30, 1983, submitted to defendant at his marital home address for work performed on December 23, 1983. Stamped, "Received 2/21/84, Squitieri & Associates."
(9) Marlin Pool Supply of Ramsey, N.J. The account is in defendant's name in care of Squitieri Associates, Hackensack, N.J. Statement dated December 31, 1983.
(10) The Hardware Store to Squitieri Associates, in care of his business address in Hackensack, N.J. Billing date January 20, 1984.
(11) Perkins Plumbing & Heating Inc. Bill submitted to defendant at the marital home address, dated February 9, 1984. Stampted, "Received 2/21/84, Squitieri & Associates."
(12) Abraham & Straus. Bill submitted to defendant in care of his business address in Hackensack, N.J. Amount payable February 6, 1984.
(13) Sears, Roebuck & Co., submitted to defendant in care of Squitieri Associates, Hackensack, N.J. Bill dated January 13, 1984.
(14) For the past two years, defendant has been responsible for paying $625.88 a month directly from his office for plaintiff's car payments to the Trust Company of New Jersey. Bill due date of March 23, 1984 mailed to Squitieri Associates, Hackensack, N.J.
(15) Rockland Electric Company. Bill dated February 21, 1984, for services rendered to the marital home. Sent to Squitieri Associates in Hackensack, N.J.
*90 Defendant's continued and purposeful contacts with this State leave no doubt that defendant is subject to in personam jurisdiction of our Court. This finding is absolutely consistent with due process in that defendant has met the requisite minimum contacts with the State of New Jersey so as not to offend the traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, supra; World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The final issue to be determined is whether New Jersey may proceed to address matters of support and equitable distribution which will bind both parties. Not only may this court so do, it must do so. Even though the Florida courts proceed with in rem divorce "[t]his course of action by New Jersey will not frustrate the legitimate interests of a sister state or obstruct and subvert the jurisdiction of another court." Mrowczynski v. Mrowczynski, 142 N.J. Super. 312, 321 (App.Div. 1976).
By determining that Florida has no in personam jurisdiction of plaintiff and that New Jersey has in personam jurisdiction of both parties, the determination of the issues of alimony and distribution of property wherever located, must be decided by this New Jersey court.
In Woliner v. Woliner, 132 N.J. Super. 216 (App.Div. 1975), aff'd o.b. 68 N.J. 324 (1975), husband obtained a California divorce by default but no determinations were made with respect to support or property rights. The divorce was, of course, valid and to be recognized in New Jersey under the full faith and credit clause. In holding that the wife was entitled to a determination of support and equitable distribution in the New Jersey courts, and that our statute provides for a foreign divorce may serve as the basis for equitable distribution of marital property in addition to a grant of alimony, the Woliner court observed that
A husband of wealth, for example, by the simple expedient of obtaining a foreign divorce on a bona fide change of domicile (feasible where the marital *91 estate is a large one) could deprive the wife of a long-continuing marriage, a New Jersey domiciliary of her acknowledged right to a division of the marital estate.
[at 224]
See also O'Loughlin v. O'Loughlin, 6 N.J. 170 (1951).
This court finds that no court other than a New Jersey court has in personam jurisdiction of both parties. It follows that New Jersey is the only state which can afford full in personam relief, whether the actual divorce is granted here or elsewhere.
The defendant relies, in part, on Manfrini v. Manfrini, 136 N.J. Super. 390 (App.Div. 1975), certif. den. 70 N.J. 526 (1976). In that case, defendant-husband obtained a final judgment of divorce in New York from his wife in New Jersey. The New York court also awarded the husband sole title to the parties' New Jersey property based on the wife's default. The court held that the New York judgment of divorce and award of the New Jersey property to the husband was clearly final and binding upon the wife and were to be accorded full faith and credit by New Jersey, as if the action had occurred in New Jersey. Id. at 394-395. It is to be noted, however, that in Manfrini, the New York court had in personam jurisdiction of both parties. See Higgenbotham v. Higgenbotham, 92 N.J. Super. 18, 36 (App.Div. 1966); Kram v. Kram, 98 N.J. Super. 274 (App.Div. 1967), aff'd 52 N.J. 545 (1968).
As to the aspect of continuation or vacation of restraints this court, having found that Florida possesses complete in rem jurisdiction, finds that it cannot and should not interfere with such jurisdiction, and does hereby vacate that portion of the restraints heretofore issued as respects defendant proceeding in rem in Florida.
Can this court, once permitting defendant to so proceed in Florida, nevertheless issue a preliminary injunction restraining defendant from proceeding in personam in Florida? This court finds that it can. This court finds that since the defendant is subject to the in personam jurisdiction of New Jersey, *92 and, therefore, subject to its injunctive powers, the question of right-to-proceed transcends the question of eventual recognition or nonrecognition of a Florida judgment. Defendant is unquestionably subject to New Jersey jurisdiction, in personam. Plaintiff is not so subject to Florida in personam jurisdiction. O'Loughlin v. O'Loughlin, 6 N.J. 170, 178. (1951). This court finds that Florida may do no more than grant the divorce. New Jersey has the sole jurisdiction to and shall determine all financial matters.
Defendant's motion to dismiss plaintiff's complaint and dissolve the restraints previously ordered is denied, except as specifically set forth above.