## MARTIN L. PATTISON *vs.* ROBERT H. HUGHES, EXECUTOR, ETC.

*Striking out Judgment when Defendant not Summoned.*

Upon a motion to strike out a final judgment by default, the evidence showed that the defendant, although returned summoned, had not in fact been summoned; that he had some indefinite knowledge that he had been sued, and attempted in good faith to find out who had sued him and for what cause, but was informed by the plaintiff's attorney that "it was all over." *Held*, that the judgment should be struck out.

Appeal from the Circuit Court for Howard County. The case is stated in the opinion of the Court.

The cause was submitted on briefs filed by *Thomas S. Hodson* and *Edward S. Kines* for the appellant, and *James Mackubin* for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the 30th of August, 1893, the late Henry E. Wooten, as attorney for the appellee, directed a summons to be issued against the appellant from the Circuit Court for Howard County, to answer an action at the suit of the appellee, as executor of Robert L. Ewing. The summons was duly issued and the appellant was returned "summoned" on the second of September. No other proceedings were taken in the cause until the 19th March, 1894, when Mr. James Mackubin entered his appearance as attorney for the appellee, and filed, for the first time, a declaration, consisting of the common counts—the suit having been originally brought on titling. On the 18th June, 1894, being the first day of the June term, a judgment by default was taken by the plaintiff against the defendant, and the same day it was extended, upon proof before the Court, for two hundred and fifty-seven dollars. Several months thereafter, on the 24th November, and as he alleges, within three or four days of the time when he first heard of either the suit or the judgment, the appellant filed a motion to strike out

the latter, first, because the summons was not served on him and he had no notice of the suit or any opportunity of defence; second, because he had no notice of the suit or judgment until the 20th Nov., and proceeded without delay to file his motion; and lastly, because he is not indebted to the plaintiff in any sum whatever, and had a perfectly good defence, of which he would have availed himself if an opportunity had been given him. In support of his motion the appellant relied upon the testimony of four witnesses, himself, his wife, his son and a neighbor, Mr. Earp. The latter was not present when the deputy sheriff called at the appellant's house, but the others all swear in the most positive manner that the officer was drunk on that occasion. The defendant says "he was drunk; he fumbled around in his pockets as though he were looking for a paper; he took no paper out, nor did he read any to me, nor did I have any paper in my hand. He turned to go away, and I said to him, what is this for, and he said, I don't know. Whereupon he got in his carriage and went away." The appellant's wife says that her attention was first called to the deputy sheriff by one of the little children, who said to her, "Come and see the funny drunken man," when she went to the door and heard the officer say to her husband, "I want you to come to Ellicott's City." She did not remember the day he told him to come; her husband asked what for, and he said, "I don't know." The son says the officer was drunk and acted like a drunken man. To use the language of the witness, "He was drunk, for no sober man would act as he did; and he said to my father, 'I want you to come to Ellicott's City.' I don't remember what day he told him to come and where and when it was, sometime in September. Father asked him what he was to come for, and the officer told him that he did not know, and he produced no papers."

There is not one word to contradict the above testimony in regard to the condition of the deputy sheriff while he was thus attempting to perform his official duty, although

he was himself called by the appellee to testify. There being then a substantial admission that the officer, who is alleged to have served the summons, was in the condition testified to by the witnesses whose testimony we have just recited, his official acts cannot be received with that respect nor have that *prima facie* verity which, by the well-settled rule of law, would otherwise be accorded them. He does testify that he called on the defendant. He says, " I don't remember the time; I don't keep any papers. I remember going there a rainy day and serving a summons on Mr. Pattison. I can't even state the year. I told him that I had a summons for him. I told him whose it was. It was raining that day, and I told him to take it in the house and read it; he said that was all right. Then I returned him summoned. That is all I know about it that day." It appears, therefore, from the overwhelming weight of evidence, that the appellant was not summoned. However, having learned that he was wanted at Ellicott's City, in September he went there, and finding the officer, and no doubt anxious and hoping to get some definite information, he again asked for it. The only testimony as to what took place at this interview between the appellant and the deputy sheriff, is that of the latter. He says, " The next time I saw Mr. Pattison was in the Court-room up here. He asked me about the bill that I summoned him on, and I told him that I knew nothing about it ; that Mr. Vansant had it, as he kept the papers. He said that he was going to see Mr. Wooten ; that is all the conversation I had with Mr. Pattison that day." And it appears that the appellant at once proceeded to call on Mr. Wooten, whom he found in the Court-room. He says, "I met Mr. Wooten. I said, Mr. Wooten, do you know what I am here for ? And he said, yes. It is all over now—go home, Pattison." This interview took place in September, and the *nar.* was not filed for six months thereafter—Mr. Wooten having died in the meantime, and the judgment was not entered until the 18th June—some nine months after the appellant had been informed that "it was all over." And

then, when we remember that it was the attorney of the appellee who gave this information to the appellant, it seems to us almost unnecessary to say anything more than that in our opinion he was, under all the circumstances of this case, justified in not making any further investigation. Assuming, though we think it extremely doubtful from the evidence, that the appellant had some indefinite sort of knowledge that he had been sued, yet, having attempted in good faith to find out what the suit was about and who had sued him, and having been informed by the plaintiff, or what amounts to the same thing, by his attorney, that " it was all over," he was not required to appear to the suit, even if he had had much more definite information and notice than he appears to have had.

There is no question here of bad faith on the part of the appellee or his attorney, but that the appellant had a right to assume, after his conversation with Mr. Wooten, that the business, case, or whatever it might be, was over and ended, is too clear for controversy. And this being so, it is equally clear the relief asked should have been granted. Common justice concedes to every man his day in Court.

*Order reversed and cause remanded
that the judgment may be stricken
out.*

(Decided March 1st, 1895.)