LITTLE *v.* MILLER, Etc.

[No. 268, September Term, 1958.]

310

*Decided June 26, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Archie D. Williams,* with whom was *Arthur G. Murphy*
on the brief, for the appellant.

*Robert S. Rody* and *Julius G. Maurer* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellees, Robert H. Miller, Jr. and his insurer, as
subrogee under an automobile collision insurance policy,
brought suit in Baltimore City against Dundalk Lumber Com-
pany (Dundalk) and against the appellant, James Little, for
damages to Miller's automobile caused by a collision with a
truck owned by Dundalk and alleged to have been operated by

Little. The accident occurred on September 10, 1951, in Baltimore, suit was filed on March 4, 1952, and Little was returned summoned on March 8, 1952. The suit was not pressed against Dundalk. On October 1, 1954, the plaintiffs obtained a judgment by default against Little. Subsequently there was an inquisition as to damages, and judgment for $1175.00 and costs was entered against Little. On November 24, 1958, Little filed a motion to vacate the judgment. There was a hearing on the motion on December 22, 1958, the motion was denied on that day, and Little appeals.

In his motion Little alleged that he was not personally served with process in this case and that the sheriff's return showing him to have been summoned was false.

Little is a resident of Anne Arundel County. He is a seaman and claims to have been absent from the country on a foreign voyage at the time of the accident here involved and again at the time when service upon him was reported to have been made by a deputy sheriff of Anne Arundel County. The deputy was not called as a witness, and Little was the only witness who testified at the hearing on the motion. He produced a discharge certificate issued by the United States Coast Guard at Baltimore. This showed that James Little had been a member of the crew of a ship which had departed from Baltimore on March 6, 1952, and had returned to that port on March 17, 1952. The vessel was a United Fruit ship. The plaintiffs-appellees questioned in this court the identity of the James Little to whom this discharge and a similar one relating to a different ship and a different voyage, covering the period from August 20th to September 21st, 1951, had been issued. They did not, however, introduce any evidence on this question, except to develop on cross-examination of Little that his father's name is James L. Little. Both discharge certificates were issued in the name of "James Little", without any initial. Each was signed "James W. Little" in the space provided for the signature of the seaman. In this connection, we note that the plaintiffs produced in the trial court a letter from the Department of Motor Vehicles (hereinafter referred to) which they apparently offered as relating to the defendant. That

letter refers to "James Wise Little" (underscoring supplied), and it appears to have been in response to a letter from the plaintiffs' counsel relating to a person of that name.

In the trial court the plaintiffs urged that in view of the fact that the defendant "had notice of the pendency of the suit and did nothing about it for a period of six years, * * * he should not receive consideration at this late hour." The trial court seems to have adopted this view. The judge said, in part, that Little took no interest in the judgment, except when he wanted the right to drive a car, and that he had waited too long and had done nothing. The judge closed his remarks with this statement: "I think they got the right man, and under the circumstances, I have great doubt whether he should have this judgment stricken, and I refuse to do it after the lapse of all this time."

The evidence of the defendant himself would, we think, sustain a finding that he knew in the latter part of March, 1952, that he had been sued in this case and despite his denial of ever having actually received any papers in the case in his hands, it could readily be inferred that the summons and a copy of the declaration were left with Little's mother and at least that she told him of them. According to Little himself, he learned of the matter through the office of the Commissioner of Motor Vehicles when he sought in March, 1952, to get a duplicate motor vehicle operator's license issued to replace one which he had lost. He was informed that his license had been revoked because of the accident. He then went to visit the plaintiffs' counsel, claiming to have gotten his address from the office of the Commissioner. The plaintiffs' counsel was out when the defendant called, but his secretary referred the defendant to the Commissioner's office. The defendant says that with the aid of his seaman's discharge he satisfied the Commissioner that he (the defendant) was not involved in the accident and that he got his license back. This restoration of the license seems fairly well substantiated by a letter from the Traffic Record Section of the Department of Motor Vehicles (which the plaintiffs produced) stating that the license of James Wise Little had been suspended as of January 6, 1955.

That was nearly two months after the judgment of November, 1954, against Little and over two years and nine months after the time when Little says his license was restored.

Little says that he first learned of the judgment against him in June, 1958, when he again sought a new driver's license as a result of his old one having been left in clothing put into a washing machine. Little denied having received a letter notifying him of the January, 1955, suspension of his license.

It appears that at some time or times not clearly specified, Little's mother, acting on Little's behalf, visited the office of the plaintiffs' counsel. Little claimed that after the Commission restored his license he "thought everything was settled." Cf. *Pattison v. Hughes,* 80 Md. 559, 31 A. 320.

The plaintiffs rely upon the general rules of law, first, that when an application to strike out a judgment is made after it has become enrolled, the judgment cannot properly be stricken out except upon proof of fraud, surprise, deceit, mistake or irregularity and, second, that in such cases the court acts in the exercise of its *quasi* equitable powers and will not strike out an enrolled judgment except upon clear proof of one of the above requisites, nor will it do so unless the party seeking to have the judgment stricken out has acted in good faith and with reasonable diligence. 2 Poe, *Pleading and Practice,* 5th Ed., §§ 390, 392. Cf. Rule 625, Md. Rules.

Both the plaintiffs and the trial court appear to have overlooked the distinction between a defect in the proceedings which goes to the jurisdiction of the court and other grounds upon which the reopening of a judgment may be sought. If, for example, a defendant learns that a judgment against him has been obtained by fraud or surprise and he does nothing for a long time to have it stricken out, he may well lose any right to relief which he might have had; but if, for some defect in service, the court lacked jurisdiction to proceed to judgment, quite a different situation is presented. See *Harvey v. Slacum,* 181 Md. 206, 29 A. 2d 276; *North v. Town Real Estate Corp.,* 191 Md. 212, 60 A. 2d 665.

In the present case we are concerned only with personal

service, and there is no suggestion that any form of constructive or substituted service is involved.

In *Harvey v. Slacum, supra,* it was held (181 Md. at page 210) that under the statute in force when the case was instituted (Code (1939), Art. 75, Sec. 153, (Sec. 154 in the 1951 Edition)), though the manner of service of a writ of summons in a suit at law was not prescribed exactly, "the service must be a personal one." The statute was modified or supplemented, effective January 1, 1948, by General Rules of Practice and Procedure, Part Three, IV, Rule 5, and that Rule was in force at the time of the institution of this suit. That Rule did not lessen the requirement of personal service, but did specify the manner of such service. It required that the sheriff leave with each defendant a copy of the summons and (subject to an exception not here pertinent) a copy of the original pleading.[1]

As was said in *Harvey v. Slacum, supra* (181 Md. 210), "no valid proceeding can be had against a person until he has been notified of the proceeding by proper summons, unless he voluntarily waives such constitutional right." See also *Piedmont-Mt. Airy Guano Co. v. Merritt,* 154 Md. 226, 140 A. 62; *Kartman v. Miliman,* 144 Md. 502, 125 A. 170; *Fahey v. Mottu,* 67 Md. 250, 10 A. 68. Cf. *Murray v. Hurst,* 163 Md. 481, 163 A. 183. Also cf. *McCormick v. St. Francis De Sales Church,* 219 Md. 422, 149 A. 2d 768, where the filing of a motion going to the merits of the case was held to amount to a general appearance and to waive an objection to the validity of service upon two of the defendants.

It is true that the burden is upon one attacking the sheriff's return to show that it is incorrect and that the defendant's mere denial that he was served is not sufficient to overcome the sheriff's return stating that he was served. *Parker v.*

---

1. Rule 104b (1) of the Maryland Rules which became effective January 1, 1957, applies to service of process in both law and equity cases and is similar in purport to old Rule 5, *supra,* and was in part derived therefrom. Code (1951), Art. 75, Sec. 154, has been superseded by Rule 104 of the Maryland Rules and was repealed by Ch. 399 of the Acts of 1957.

*Berryman,* 174 Md. 356, 198 A. 708; *Weisman v. Davitz,* 174 Md. 447, 199 A. 476. However, the presumption in favor of the correctness of the sheriff's return can be overcome, as in *German v. Slade,* 42 Md. 510, *Pattison v. Hughes, supra,* and *Piedmont-Mt. Airy Guano Co. v. Merritt, supra.* In the latter case there was evidence corroborating the defendant's denial to the effect that the defendant was not at the place where the deputy sheriff claimed to have served him at the time of the alleged service, and in addition the deputy's identification of him in the courtroom was rather uncertain.

If the trial judge had decided on conflicting testimony that, as a matter of fact, the defendant in the instant case had actually been served, we could not disturb such a finding unless it was clearly erroneous (Rule 886, Maryland Rules); but here the trial judge made no such finding. He evidently found that the defendant knew of this suit since some time in March, 1952, and thought that he did nothing about the suit or the judgment until 1958. The judge then concluded as a matter of law that these findings would bar the striking out of the judgment at the late date when such relief was sought.

In this we think he was in error. Knowledge on the part of the defendant of the pendency of the suit and his consequent opportunity to come in and defend against the claim asserted, do not, of themselves, cure the defect of lack of personal service, and do not bar relief against a judgment obtained without personal service on the defendant. *Piedmont-Mt. Airy Guano Co. v. Merritt, supra; Wilmer v. Epstein,* 116 Md. 140, 81 A. 379. See also *Kartman v. Miliman, supra* (144 Md. at 507). As was said in the *Piedmont-Mt. Airy Guano Co.* case (154 Md. 228): "The motion to strike out the judgment was filed after the lapse of the term in which it was rendered, but unless the appellee was summoned as a defendant, the court was without jurisdiction to enter the judgment against him, as he had not voluntarily appeared. *Kartman v. Miliman,* 144 Md. 502, *Fahey v. Mottu,* 67 Md. 250. Even if he had actual knowledge of the suit, that fact would not confer the requisite jurisdiction. *Wilmer v. Epstein,* 116 Md. 143."

In accordance with the views above stated, the judgment

denying the defendant's motion to vacate will be reversed and the case will be remanded for further proceedings.

> *Judgment reversed and case remanded for further proceedings not inconsistent with the opinion herein; the costs of this appeal to be paid by the appellees.*