626 A.2d 384

**Alfred Millman LOHMAN, Jr.**

v.

**Melva Lee LOHMAN.**

**No. 130, Sept. Term, 1992.**

Court of Appeals of Maryland.

June 25, 1993.

114

Edward John Skeens (on brief), Suitland, for petitioner.

Terrence J. McGann (on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

We issued a writ of certiorari to determine whether a circuit court has jurisdiction to adjudicate issues involving marital property and alimony sought by a nonresident spouse more than 90 days after granting the other spouse, a Maryland resident, an absolute divorce based upon service of process by publication.

## I.

Petitioner, Alfred Millman Lohman, Jr., and respondent, Melva Lee Lohman, were married May 7, 1954, in Washing-

ton, D.C. Three children were born of the marriage, and at the time of the proceedings below, each was a fully emancipated adult. In April 1987, the parties agreed to separate, but continued to reside in the same marital home, albeit in different bedrooms, which was located at 8501 Oldham Drive in Upper Marlboro.

On June 20, 1989, Ms. Lohman filed in the Circuit Court for Prince George's County a Complaint for Absolute Divorce and for Other Relief along with a Petition for Ex Parte Injunction. The petition stated:

"1. That [Ms. Lohman] filed her Complaint for Absolute Divorce and For Other Relief.... Service of process has not been had upon [Mr. Lohman] as of the filing of this Petition.

"2. That [Mr. Lohman] has embarked on a course of action of harassment of [Ms. Lohman]. He has advised [Ms. Lohman], as well as the adult children of the parties that it is his intention to remain in the home and continually harass her, and he is going to strip the household of all of her belongings while she is away on vacation, and that she will never see them again.

"3. That [Ms. Lohman] will be leaving on vacation ... and ... it would be in the interests of justice for the Court to issue an immediate Ex Parte Injunction, ordering and directing [Mr. Lohman] to stay away from the family home, to cease his course of action of harassing and tormenting [Ms. Lohman], and to not remove or dispose of any household goods, furniture or furnishings, or any other items of personal property from the family home."

An ex parte injunction was granted the same day, and it ordered Mr. Lohman "to cease his course of action of harassing and tormenting [Ms. Lohman], and to not remove or dispose of any household good [sic], furniture and furnishings from the family home, pending a hearing in these proceed-

ings." [1]  A copy of that injunction was served on Mr. Lohman by Ms. Lohman's attorney on June 22, 1989. Mr. Lohman was not served at that time with a copy of either the Petition for Ex Parte Injunction or the Complaint for Absolute Divorce. Process was not issued on the Complaint for Absolute Divorce until June 28, 1989, and Mr. Lohman was never personally served with a copy of the complaint.

Upon being served with the ex parte injunction, Mr. Lohman left the marital home and failed to notify his family, friends or Ms. Lohman of his whereabouts. Unable to effect service of the complaint on Mr. Lohman, Ms. Lohman asked the circuit court for leave to proceed by publication. In her affidavit in support of that motion, Ms. Lohman set forth her attempts to locate and serve Mr. Lohman. She stated that she believed Mr. Lohman, who had retired from the U.S. Postal Service in 1988, had gone to live with his sister in Alamosa, Colorado, but that the attempted service by certified mail to his sister's address with restricted delivery to Mr. Lohman was returned and marked "unclaimed." She stated that telephone directories and the motor vehicle administrations in Maryland, Virginia and the District of Columbia provided no assistance in locating Mr. Lohman. The affidavit also related that Ms. Lohman had contacted her husband's cousin to ascertain his whereabouts but that his cousin was unaware of where Mr. Lohman was residing. She also stated that, despite speaking by telephone with his adult children during the Christmas holidays of 1989, Mr. Lohman refused to disclose his whereabouts to them.[2]

On the basis of her affidavit, Ms. Lohman's Motion to Proceed by Order of Publication was granted by the circuit

---

1. Although the ex parte injunction originally contained language ordering Mr. Lohman "to stay away from the family home of the parties at 8501 Oldham Road [sic], Upper Marlboro, Maryland," this language was lined out of the order at the time it was issued.

2. At oral argument and in his brief, Mr. Lohman's attorney asserted that Mr. Lohman had been residing with his brother in Lake Como, Florida.

court on February 2, 1990.[3]  In early March, an order of publication, reciting the substance of the complaint and the relief sought by Ms. Lohman, was duly published in a local newspaper published in Prince George's County in each of three consecutive weeks.  A copy of the order of publication was also mailed to Mr. Lohman at the address of the former marital home of the parties.  Not surprisingly, no answer to the complaint was ever filed and Ms. Lohman moved for an Order of Default, which was granted on June 27, 1990.  A Judgment of Absolute Divorce was entered on September 18, 1990.  Although in her complaint Ms. Lohman requested alimony, attorney's fees, and a monetary award reduced to judgment, the Judgment of Absolute Divorce did not address any of these issues.

On June 27, 1991, Mr. Lohman filed in the Circuit Court for Prince George's County a pleading entitled Petition to Adjudicate Marital Property of the Parties.  In that pleading, he gave his address as P.O. Box 542, Lake Como, Florida.  The petition alleged that the parties had acquired substantial marital property during their thirty-five years of marriage, including the marital home, several motor vehicles, various retirement benefits and bank accounts.  The petition requested the court to adjudicate the marital property and grant to Mr. Lohman both a monetary award and an award of alimony. Ms. Lohman filed a Motion to Dismiss the petition.

Following oral argument on November 18, 1991, the circuit court granted Ms. Lohman's motion with prejudice.  In an oral opinion, the circuit court reasoned that, although *in personam* jurisdiction was never acquired over Mr. Lohman, the marital relationship was effectively severed by the court with only *in rem* or *quasi in rem* jurisdiction.  The circuit

---

3.  As issued, the order permitted the plaintiff "to effect service of process upon the Defendant, Alfred Millman Lohman, Jr., by mailing a copy of the Order of Publication to the Defendant's last known address and posting by the Sheriff of a copy of the Order on the courthouse door."  The record is not clear why the court ordered service by posting was unilaterally changed to service by publication.  For purposes of this decision we find this discrepancy immaterial.

court ruled that Mr. Lohman's right to claim alimony was extinguished at the time of the severance of the marital relationship. The circuit court also reasoned that in accordance with Maryland Code (1991 Repl.Vol.), § 8–203(a) of the Family Law Article, Mr. Lohman's right to a determination of marital property and a monetary award was extinguished upon the granting of the absolute divorce, since the court did not expressly reserve the authority to make that determination within ninety days of the divorce decree. Mr. Lohman filed an appeal from that judgment to the Court of Special Appeals.

## II.

Using the same rationale as the circuit court, the Court of Special Appeals affirmed the circuit court. *Lohman v. Lohman,* 93 Md.App. 588, 613 A.2d 1015 (1992). In discussing service of process and jurisdiction over the defendant, Mr. Lohman, the intermediate appellate court stated:

"In the Petition for Ex Parte Injunction there is a representation that the appellee filed a complaint for absolute divorce, which contained prayers for other relief and for a rule to show cause. Although appellant was never personally served with the complaint, he was on notice of some pending action when he received the Ex Parte Injunction. He failed to take any action to determine the bases for the injunction. Had he reviewed the court records, which included the injunction, it would have been crystal clear to him that a petition for absolute divorce had been filed. Instead of acting in a responsible way, he absconded from the State in an effort to avoid service. Specifically, appellant left the State, 'went who knows where[,]' and did not contact appellee after leaving.

"In light of appellant's disappearance, the order of publication was proper service of process according to Maryland Rules 2–121 and 2–122. . . .

"Appellee filed an affidavit indicating that appellant absconded from the State, and that service of process was

attempted but was returned and marked 'unclaimed.' Appellee then effected service by mailing a copy of the Order of Publication to the appellant at his last known address, and posting a copy of the order on the courthouse door. Thus, appellee complied with Maryland Rules 2–121 and 2–122, and appellant received fair notice of the impending hearing."

93 Md.App. at 592–93, 613 A.2d at 1017–18 (citations omitted). Finding service of process to have been properly effected, and consequently finding the circuit court to have acquired jurisdiction over Mr. Lohman, the intermediate appellate court went on to conclude that Mr. Lohman's right to claim alimony had been extinguished. The intermediate appellate court stated:

"It is a long standing rule in Maryland that once a divorce is granted and becomes final, the right to award alimony terminates. *Wilson v. Wilson,* 87 Md.App. 547, 552–53, 590 A.2d 579 (1991) (quoting *Altman v. Altman,* 282 Md. 483, 490–92, 386 A.2d 766 (1978); *Upham v. Upham,* 238 Md. 261, 265, 208 A.2d 611 (1965)). This rule is codified in § 11–101(a) of the Maryland Annotated Code Family Law Article, which states:

(a) *Where available.*—The court may award alimony:

(1) on a bill of complaint for alimony; or

(2) as part of a decree that grants:

(i) an annulment;

(ii) a limited divorce; or

(iii) an absolute divorce."

93 Md.App. at 591, 613 A.2d at 1017. The intermediate appellate court then distinguished two decisions of this Court, *Altman v. Altman,* 282 Md. 483, 386 A.2d 766 (1978) and *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969), *overruled on other grounds by Eastgate Assocs. v. Apper,* 276 Md. 698, 350 A.2d 661 (1976), which permitted a claimant to recover alimony following the awarding of a foreign divorce

decree to her former spouse by a forum lacking personal jurisdiction over the claimant.[4]

In *Altman,* a wife instituted a suit in the circuit court for a divorce *a mensa et thoro* and alimony. Following the initiation of the wife's suit, the husband went to Nevada and obtained a valid decree for absolute divorce. The Nevada decree made no provision for alimony or support. Although the wife received notice of the Nevada suit, she was not subject to the jurisdiction of the Nevada court, as she did not appear generally or specially in the Nevada proceedings, nor was she ever personally served with the complaint in the State of Nevada. Subsequent to the Nevada decree, the circuit court acknowledged the validity of the Nevada divorce decree, but awarded the wife permanent alimony. We upheld the right of the wife to seek alimony following the termination of the marital status by an out-of-state ex parte divorce decree.

---

**4.** As interpreted by the Supreme Court of the United States, the Full Faith and Credit Clause, Section 1 of Article IV of the United States Constitution, requires Maryland to recognize an ex parte divorce decree rendered by a court of another state having jurisdiction over the complainant spouse but lacking jurisdiction over the defendant spouse. *Williams v. North Carolina,* 317 U.S. 287, 303, 63 S.Ct. 207, 215, 87 L.Ed. 279, 288–89 (1942) (*Williams I*). Nonetheless, the Supreme Court has allowed states to protect their domiciliaries by not giving effect to that portion of an ex parte divorce decree which purports to cut off a domiciliary's right to alimony or support. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418–19, 77 S.Ct. 1360, 1362–63, 1 L.Ed.2d 1456, 1459 (1957); *Estin v. Estin,* 334 U.S. 541, 548–49, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561, 1568–69 (1948). The result of the Supreme Court's interpretation of the Full Faith and Credit Clause as applied to foreign divorce decrees "is to make the divorce divisible—to give effect to the [ex parte] decree insofar as it affects marital status and to make it ineffective on the issue of alimony." *Estin,* 334 U.S. at 549, 68 S.Ct. at 1218, 92 L.Ed. at 1569. *See also* Note, *Divisible Divorce,* 76 Harv. L.Rev. 1233 (1963); Note, *Divisible Divorce in Maryland—Does It Exist?,* 30 Md.L.Rev. 63 (1970).

We first recognized this theory of divisible divorce in *Dackman, supra,* and *Altman, supra.* Since *Dackman* and *Altman,* the theory of divisible divorce has received legislative recognition as provided by Md.Code (1991 Repl.Vol.), §§ 8–212 and 11–105 of the Family Law Article, *see infra* footnote 8. *See also Wallace v. Wallace,* 290 Md. 265, 429 A.2d 232 (1981); *Komorous v. Komorous,* 56 Md.App. 326, 467 A.2d 1039 (1983).

*Dackman* was factually similar in many respects to *Altman* except that, unlike the husband in *Altman* who was subject to the jurisdiction of the circuit court because he had been served with process within the state, the husband in *Dackman,* a Nevada domiciliary, was not subject to the jurisdiction of the circuit court because he had not been served in Maryland nor had he entered a general appearance in circuit court.[5] In *Dackman,* although we determined that the circuit court lacked the power to issue an *in personam* decree ordering the husband to pay alimony, we concluded that the presence in Maryland of property belonging to the husband, coupled with other factors connecting the controversy with this state, warranted the exercise of quasi in rem jurisdiction over the husband. We held that the wife could attach her husband's property in this state and satisfy any award of alimony only to the extent of his property within the forum.[6]

---

**5.** As *Altman* noted, subsequent to *Dackman* the General Assembly in 1978 enacted a long arm provision, Md.Code (1989 Repl.Vol.), § 6–103.1 of the Courts Article, to provide for jurisdiction over a nonresident defendant for actions arising out of the marital relationship. Section 6–103.1 provides:

> "A court may exercise personal jurisdiction over a nonresident defendant in any civil proceeding arising out of the marital relationship or involving a demand for child support, spousal support, or counsel fees if the plaintiff resides in this State at the time suit is filed and the nonresident defendant has been personally served with process in accordance with the Maryland Rules and:
> (1) This State was the matrimonial domicile of the parties immediately before their separation; or
> (2) The obligation to pay child support, spousal support, or counsel fees arose under the laws of this State or under an agreement executed by one of the parties in this State."

**6.** Md.Code (1991 Repl.Vol.), § 11–104 of the Family Law Article provides for an award of alimony similar to that which we sanctioned in *Dackman.* Section 11–104 provides:

> (a) *In general.*—In a proceeding for a limited or absolute divorce, the court may award to the plaintiff alimony as a part of a decree granting a divorce or alimony pendente lite, if:
> (1) the bill of complaint asks for alimony and says that the defendant owns property in this State; and
> (2) the court lacks or is unable to exercise personal jurisdiction over the defendant.

In distinguishing *Altman* and *Dackman,* the intermediate appellate court stated:

> "The rationale behind this exception is that there is no justification in permitting a foreign court's divorce decree to endanger a claimant's material well-being by terminating the support rights of the claimant without considering the claimant's scope of need. The *Altman* court stated that such an exception is based upon 'Maryland's predominant interest in safeguarding the economic security of its domiciliaries who suffer loss of financial support at the hands of an itinerant spouse'.
>
> "In the case *sub judice,* Maryland's predominant interest requires this court to abide by the long standing rule as opposed to the [*Altman* ] exception. The case before us is distinguished from [*Altman* ] and its progeny, because there is no foreign divorce, but rather a Maryland divorce granted to a resident of Maryland against an absconding spouse who clearly attempted to evade process."

93 Md.App. at 591–92, 613 A.2d at 1017 (citations omitted). The Court of Special Appeals concluded that

> "[t]he record does not indicate that [Mr. Lohman] was a resident of any other state, therefore, jurisdiction was properly obtained and the absolute divorce was not an *ex parte* judgment, but a default judgment in accordance with Maryland Rule 2–613. Under these facts, the divorce became final upon judgment and [Mr. Lohman] is not entitled to have the alimony issue considered by the court."

93 Md.App. at 594, 613 A.2d at 1018 (citations omitted).

The intermediate appellate court used similar reasoning in upholding Md.Code (1991 Repl.Vol.), § 8–203(a) of the Family Law Article as a statutory bar to adjudication of the marital property issues. Section 8–203(a) provides:

---

(b) *Limit on award.*—Any alimony or alimony pendente lite that is awarded under this section is payable only from the property referred to in the bill of complaint or the proceeds of that property. The court may pass any order regarding the property that is necessary to make the award effective.

"(a) *Time of court action.*—In a proceeding for an annulment or an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property:

(1) when the court grants an annulment or an absolute divorce;

(2) within 90 days after the court grants an annulment or divorce, if the court expressly reserves in the annulment or divorce decree the power to make the determination; or

(3) after the 90–day period if:

(i) the court expressly reserves in the annulment or divorce decree the power to . make the determination;

(ii) during the 90–day period, the court extends the time for making the determination; and

(iii) the parties consent to the extension."

Reasoning that Mr. Lohman failed to comply with the mandatory time-frames of § 8–203(a), the Court of Special Appeals concluded that the circuit court did not have jurisdiction to make a monetary award. Thus, the Court of Special Appeals held that Mr. Lohman's Petition to Adjudicate Marital Property was properly dismissed by the circuit court.

For reasons grounded on lack of subject matter jurisdiction, the circuit court and the Court of Special Appeals determined that Mr. Lohman's claims for alimony and a monetary award were extinguished. As we shall explain, the Circuit Court for Prince George's County never acquired *in personam* jurisdiction over Mr. Lohman. Consequently, the judgment of Absolute Divorce entered on September 18, 1990, could not terminate Mr. Lohman's rights to any alimony or a monetary award to which he is possibly entitled. Accordingly, we shall reverse.[7]

---

**7.** In his brief and at oral argument, Mr. Lohman did not dispute the validity of the ex parte divorce decree to the extent that it terminated his marital status. Although the Supreme Court has been reluctant to label divorce proceedings "as actions in rem," *Williams v. North Carolina,* 325 U.S. 226, 232, 65 S.Ct. 1092, 1096, 89 L.Ed. 1577, 1582–83 (1945) (*Williams II* ); *Williams v. North Carolina,* 317 U.S. 287, 297–

## III.

### A.

It is fundamental that before a court may impose upon a defendant a personal liability or obligation in favor of the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant. *Altman,* 282 Md. at 486, 386 A.2d at 768; *Glading v. Furman,* 282 Md. 200, 202, 383 A.2d 398, 400 (1978); *McSherry v. McSherry,* 113 Md. 395, 400, 77 A. 653, 655 (1910). Moreover, it is well settled that in order to extinguish a spouse's right to alimony or support a court must have obtained jurisdiction over that spouse. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418–19, 77 S.Ct. 1360, 1362–63, 1

99, 63 S.Ct. 207, 213, 87 L.Ed. 279, 285–86 (1942) (*Williams I* ), it is still useful as a shorthand method of classifying the action. One commentator has stated:

"Under the in rem theory of the nature of the divorce action, the marital status was conceived of as a res having its situs at the marital domicile. Later, when the capacity of a married woman to acquire a domicile separate from that of her husband came to be recognized, it was accepted that the marital status was sufficiently present to provide the basis for divorce jurisdiction at the domicile of either of the parties. Since the action was viewed as in rem, personal jurisdiction over the other spouse was not necessary for jurisdiction to terminate the marital status."

Robert C. Casad, *Jurisdiction in Civil Actions* § 9.02[1] (1991). *See also Epstein v. Epstein,* 193 Md. 164, 66 A.2d 381 (1949); *Garner v. Garner,* 56 Md. 127 (1881). In *Williams I,* the Supreme Court stated the requirements necessary for a valid ex parte divorce decree:

"Domicil of the plaintiff, immaterial to jurisdiction in a personal action, is recognized ... as essential in order to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least when the defendant has neither been personally served nor entered an appearance.... Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders.... [I]t is plain that each state by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. *There is no constitutional barrier if the form and nature of the substituted service meet the requirements of due process.*"

317 U.S. at 297–99, 63 S.Ct. at 213, 87 L.Ed. at 285–86 (emphasis added) (citations omitted).

L.Ed.2d 1456, 1459 (1957); *Estin v. Estin,* 334 U.S. 541, 548–49, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561, 1568–69 (1948); Robert C. Casad, *Jurisdiction in Civil Actions* § 9.02[4] (1991); Homer H. Clark, *The Law of Domestic Relations in the United States* § 12.4 (1988). In *Vanderbilt,* although deciding the case based on its interpretation of the Full Faith and Credit Clause, the Supreme Court was presented with a factual scenario similar to that which was presented to this Court in *Altman* and commented on the ability of a divorce decree to extinguish the support rights of a spouse not subject to the jurisdiction of the divorce court. The Supreme Court stated that "the Nevada divorce court was as powerless to cut off the wife's support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction." 354 U.S. at 418–19, 77 S.Ct. at 1362–63, 1 L.Ed.2d. at 1459.

We stated in *Altman* that

"[i]t is virtually axiomatic that a decree for alimony operates as an *in personam* judgment and thus is not binding on the person against whom it is passed unless the court has acquired jurisdiction over him. *McSherry v. McSherry,* 113 Md. [395, 400 (1910) ]; *see Keen v. Keen,* 191 Md. 31, 36, 60 A.2d 200 (1948); *Woodcock v. Woodcock,* 169 Md. 40, 46–47, 179 A. 826 (1935)."

282 Md. at 487–88, 386 A.2d at 769. We also recognized in *Altman* that a judgment extinguishing a spouse's right to claim alimony is an *in personam* judgment and is similarly not binding against the spouse seeking alimony unless the court had acquired jurisdiction over the person of the claimant spouse. In addition, in *Wallace v. Wallace,* 290 Md. 265, 429 A.2d 232 (1981), we held that in a case "where a bona fide resident of another state was awarded a divorce on a 'no fault' ground by a court of that forum lacking personal jurisdiction over the other spouse, the latter spouse may utilize his or her entitlement to the same foreign decree as a basis for an award of alimony by courts in this State." *Id.* at 285, 429 A.2d at

243.[8]  Consequently, it is irrefutable that in order to extinguish Mr. Lohman's right to claim alimony the circuit court must have acquired *in personam* jurisdiction over him.

■   Likewise, because of the nature of a monetary award, in order to extinguish a spouse's right to claim a monetary award a court must acquire *in personam* jurisdiction over the spouse.  Discussing the nature of the monetary award in *Herget v. Herget*, 319 Md. 466, 573 A.2d 798 (1990), Judge McAuliffe speaking for this Court stated:

"The monetary award that the wife seeks is authorized by Maryland Code (1984, 1989 Cum.Supp.)  Family Law Article § 8–201 *et seq.*  The concept of a monetary award is relatively new in Maryland, having been first adopted in 1978.  Chapter 794, Laws of Maryland 1978.  Its function is to provide a means for the adjustment of inequities that may result from distribution of certain property in accordance with the dictates of title.  With one exception, a divorce court in Maryland is not empowered to alter title to real or personal property held by the parties, or to directly divide or distribute that property in a way that is inconsistent with title.  The court may, however, after giving con-

---

**8.**  The principle that a foreign divorce decree awarded to one spouse by a forum lacking jurisdiction over the other spouse cannot extinguish the other spouse's right to alimony has been codified in § 11–105 of the Family Law Article.  Section 11–105 provides:

"If an annulment or a limited or absolute divorce has been granted by a court in another jurisdiction, a court in this State may award alimony to either party if:

(1) the court in the other jurisdiction lacked or did not exercise personal jurisdiction over the party seeking alimony;  and

(2) the party seeking alimony was domiciled in this State at least 1 year before the annulment or divorce was granted."

This same principle with regard to a monetary award has been codified in § 8–212 of the Family Law Article.  Section 8–212 provides:

"If an annulment or a divorce has been granted by a court in a foreign jurisdiction, a court in this State may exercise the powers under [the Marital Property Act] if:

(1) 1 of the parties was domiciled in this State when the foreign proceeding was commenced;  and

(2) the court in the other jurisdiction lacked or did not exercise personal jurisdiction over the party domiciled in this State or jurisdiction over the property at issue."

sideration to factors enumerated by the legislature, enter a monetary award against one party and in favor of the other when that action is appropriate to adjust an inequity that would otherwise result from distribution, strictly in accordance with title, of property qualifying as 'martial property.' To the extent a monetary award is immediately due and owing, the court may enter a judgment reflecting it, thereby subjecting the property of the indebted party to lien and execution."

319 Md. at 470–71, 573 A.2d at 800 (footnote omitted). Judge McAuliffe commented thereafter that "[c]ertainly, under a Fourteenth Amendment due process analysis, the right to a monetary award properly would be characterized as a 'property interest.' *See generally*, L. Tribe, *American Constitutional Law*, § 10–9 (2d. ed. 1988)." 319 Md. at 475, 573 A.2d at 802. For more detailed discussions of the Maryland marital property and monetary award scheme, see *Pope v. Pope*, 322 Md. 277, 587 A.2d 481 (1991); *Zandford v. Wiens*, 314 Md. 102, 549 A.2d 13 (1988); *Niroo v. Niroo*, 313 Md. 226, 545 A.2d 35 (1988); *Grant v. Zich*, 300 Md. 256, 477 A.2d 1163 (1984); *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982); *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981); John F. Fader, II & Richard J. Gilbert, *Maryland Family Law* Chapter 17 (1990, 1991 Supp.). In *McAlear v. McAlear*, 298 Md. 320, 469 A.2d 1256 (1984), we refused to equate a monetary award to an award for alimony, which is exempt from the constitutional prohibition against imprisonment for debts, and held that a monetary award, unlike an award of alimony, could not be enforced by contempt. Nonetheless, we recognized the many common characteristics between an award of alimony and a monetary award.

"We recognize, as contended by the wife, that there is an interrelationship between a monetary award ... and an award of alimony.... A monetary award, particularly one required to be paid in installments, resembles an award of alimony that requires periodic payments for a definite period of time. Moreover, in determining the amount of either a monetary award or alimony, equity courts are required to

consider similar factors, such as the value of all property interests of the spouses, the contributions—monetary and nonmonetary—of the spouses, the economic circumstances of the spouses at the time of the award, the facts and circumstances that contributed to the estrangement of the spouses, and the duration of the marriage. Additionally, in determining the amount of a monetary award, equity courts must consider any award of alimony, while in determining the amount of alimony, equity courts must consider any monetary award. Moreover, a monetary award may be reduced to a judgment only to the extent that any part of the award is due and owing. Finally, a monetary award may be granted when alimony is not granted."

298 Md. at 347–48, 469 A.2d at 1270. As our prior characterizations of a monetary award suggest, the right to claim a monetary award is a personal right of a spouse, equivalent in nearly all respects, as the right of a spouse to claim an award of alimony. Therefore, as the General Assembly has recognized in § 8–212 with regard to foreign divorce decrees, *see supra* footnote 8, a circuit court cannot extinguish a spouse's right to claim a monetary award unless it first obtains *in personam* jurisdiction over that spouse. This view is shared by courts in other jurisdictions having equitable distribution schemes, *Cottone v. Cottone,* 547 A.2d 625 (Del.Fam.Ct.1988); *In re Marriage of Passiales,* 144 Ill.App.3d 629, 98 Ill.Dec. 419, 494 N.E.2d 541 (1986); *In re Marriage of Hudson,* 434 N.E.2d 107 (Ind.Ct.App.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983); *In re Marriage of Kimura,* 471 N.W.2d 869 (Iowa 1991); *Rutledge v. Rutledge,* 26 Mass. App.Ct. 537, 529 N.E.2d 1361 (1988); *Edwards v. Edwards,* 709 S.W.2d 165 (Mo.Ct.App.1986); *In re Marriage of Breen,* 560 S.W.2d 358 (Mo.Ct.App.1977); *Smith v. Smith,* 459 N.W.2d 785 (N.D.1990), including those jurisdictions that permit monetary awards, *Squitieri v. Squitieri,* 196 N.J.Super. 76, 481 A.2d 585 (Ch.Div.1984); *Carroll v. Carroll,* 88 N.C.App. 453, 363 S.E.2d 872 (1988); *Mock v. Mock,* 11 Va.App. 616, 400 S.E.2d 543 (1991).

B.

There can be no judgment nor decree *in personam* unless the defendant has been notified of the proceeding by proper summons, for the court has no jurisdiction over him until such service is properly accomplished, or is waived by a voluntary appearance by the defendant, either personally or through a duly authorized attorney. *Harvey v. Slacum*, 181 Md. 206, 210, 29 A.2d 276, 278 (1942); 3 *Poe's Pleading and Practice* § 62, at 59 (6th ed. 1975). For this reason we have repeatedly held that defective service of process is a jurisdictional defect, *Mooring v. Kaufman*, 297 Md. 342, 355, 466 A.2d 872, 878 (1983); *Miles v. Hamilton*, 269 Md. 708, 713, 309 A.2d 631, 634 (1973); *Keen v. Keen*, 191 Md. 31, 36, 60 A.2d 200, 203 (1948); *McSherry v. McSherry*, 113 Md. 395, 400, 77 A. 653, 655 (1910), and actual knowledge of the proceedings on the part of the defendant will not cure that defect, *Sheehy v. Sheehy*, 250 Md. 181, 184–85, 242 A.2d 153, 155 (1968); *Little v. Miller*, 220 Md. 309, 315–16, 153 A.2d 271, 274–75 (1959); *Piedmont–Mt. Airy Guano Co. v. Merritt*, 154 Md. 226, 228, 140 A. 62, 63 (1928); *Kartman v. Miliman*, 144 Md. 502, 505–07, 125 A. 170, 171 (1924); *Wilmer v. Epstein*, 116 Md. 140, 143–46, 81 A. 379, 381–82 (1911).

In order to acquire *in personam* jurisdiction service of process must be effected in accordance with Md.Rule 2–121. That rule provides:

**"Rule 2–121. PROCESS–SERVICE–IN PERSONAM**

"**(a) Generally.**—Service of process may be made within this State or outside this State when authorized by the law of this State, by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it, or by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.' Service by certified mail under this Rule is complete upon delivery. Service outside the State may also be made in the manner prescribed by the

court or prescribed by the foreign jurisdiction if reasonably calculated to give actual notice.

"(b) **Evasion of Service.**—When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business, dwelling house, or usual place of abode of the defendant.

"(c) **By Order of Court.**—When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and that service pursuant to section (b) of this Rule is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.

"(d) **Methods Not Exclusive.**—The methods of service provided in this Rule are in addition to and not exclusive of any other means of service that may be provided by statute or rule for obtaining jurisdiction over a defendant."

The Court of Special Appeals stated that "[i]n light of [Mr. Lohman's] disappearance, the order of publication was proper service of process according to Maryland Rules 2–121 and 2–122." 93 Md.App. at 592, 613 A.2d at 1017. The latter rule provides in part:

"**Rule 2–122. PROCESS–SERVICE–IN REM OR QUASI IN REM**

"(a) **Service By Posting or Publication.**—In an in rem or quasi in rem action when the plaintiff has shown by affidavit that the whereabouts of the defendant are unknown and that reasonable efforts have been made in good faith to locate the defendant, the court may order service by the mailing of a notice to the defendant's last known address and:

(1) by the posting of the notice by the sheriff at the courthouse door or on a bulletin board within its immediate vicinity, or

(2) by publishing the notice at least once a week in each of three successive weeks in one or more newspapers of general circulation published in the county in which the action is pending, or

(3) in an action in which the rights relating to land including leasehold interests are involved, by the posting of the notice by the sheriff in a conspicuous place on the land.

Additionally, the court may order any other means of notice that it deems appropriate in the circumstances."

When reasoning that the order of publication was proper service of process according to Rules 2–121 and 2–122, the Court of Special Appeals omitted any reference to the first prepositional phrase of Rule 2–122(a). That phrase, "[i]n an in rem or quasi in rem action," clearly qualifies the jurisdiction of the court where service is effected according to that rule.

Unable to personally serve Mr. Lohman after he had left the marital home, Ms. Lohman attempted to comply with Rule 2–121(a) by mailing the process using certified mail with restricted delivery to "Alfred Millman Lohman, Jr., c/o Theresa Wright, 4773 S. 103rd Road, Alamosa, Colorado 81101." Following the return of the certified mailing, which was marked "unclaimed," Ms. Lohman requested circuit court for leave to proceed to effect service of process by publication. Although Ms. Lohman in both her motion and accompanying affidavit asserted baldly "[t]hat it appears that the Defendant has been avoiding service," service was not attempted according to Rule 2–121(b).[9]

---

**9.** Although not necessary for the disposition of this case, we note that the record, primarily the affidavit, fails to demonstrate an evasion of service.

"Evasion of service of process is not always easy to show. It requires proof of affirmative acts to evade service of process, and the inability to serve, without more, is insufficient. If, for example, the

■ Service was apparently attempted pursuant to Rule 2–121(c) through the incorporation of Rule 2–122. Rule 2–121(c) provides, in pertinent part, that "[w]hen proof is made by affidavit that good faith efforts to serve the defendant ... have not succeeded ... the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice." The phrase "when reasonably calculated to give actual notice" is the due process minimum requirement. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950); *see also Greene v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). We need not determine whether service in this case was constitutionally deficient, for we simply hold that service in this case failed to meet the requirements of Rule 2–121(c).

Although Ms. Lohman's affidavit sets forth her attempts to locate her husband, we conclude her efforts failed to reach the level of "good faith" that is required by Rule 2–121(c). The record indicates that, in addition to the Lohman's three adult children, Mr. Lohman had at least two living siblings. Although her affidavit states that Mr. Lohman failed to disclose his whereabouts to his adult children, the record fails to demonstrate that any inquiries were made to Mr. Lohman's siblings to determine his whereabouts. After thirty-five years of marriage, good faith requires at least that much effort.

---

defendant is confronted by a process server and refuses to accept the summons, or slams the door in the face of the process server, or sees the process server and refuses to answer the door when he has good reason to know he is about to be served, an affidavit to that effect may form the basis for an order authorizing the special service provided for under section (b) of this rule. When authorized, service is effected by leaving process at the defendant's residence or place of business with a person of suitable age and discretion and by mailing a copy to the defendant at his last known address. This method is reasonably calculated to give actual notice of the action, particularly in the context of evasion efforts on the part of the defendant." Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 96 (2d ed. 1992). Even with evasion of service, the requirement for personal service is not dispensed with, rather the rules governing service are merely relaxed somewhat.

Obviously, what amounts to good faith efforts to serve the defendant will vary based on the circumstances. In this case, without any determination as to whether Mr. Lohman was in fact residing with his sister in Colorado, service was attempted under Rule 2–121(a) by blindly mailing the process to his sister's address in Colorado, using restricted delivery. This single blind attempt at service and a concomitant failure to diligently determine Mr. Lohman's whereabouts fail to meet the requirement of "good faith efforts to serve the defendant."

■ Moreover, service in this case consisted of publishing the Order of Publication in a county newspaper in each of three successive weeks and mailing a copy of the order of publication to Mr. Lohman's last known address (the marital home, still occupied by Ms. Lohman who knew that Mr. Lohman was not residing there). Ms. Lohman effected this service by publication notwithstanding the acknowledgment in her affidavit that Mr. Lohman was no longer within the state. The Supreme Court's admonishment in *Mullane v. Central Hanover Bank & Trust Co.* bears repeating here:

> "It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.... Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.... In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint."

339 U.S. at 315, 70 S.Ct. at 658, 94 L.Ed. at 874. Although we do not go so far as to hold that service by publication is never permissible under Rule 2–121(c), it is sufficient to simply recognize that in the circumstances of this case service was

not "reasonably calculated to give actual notice." [10]

Finally, the Court of Special Appeals seemed to suggest that service according to Rule 2–121 was not required to subject the defendant to the jurisdiction of the court, but rather, he was subject to the jurisdiction of the court because "he was on notice of some pending action." The intermediate appellate court stated:

"In the Petition for Ex Parte Injunction there is a representation that the appellee filed a complaint for absolute divorce, which contained prayers for other relief and for a rule to show cause. Although appellant was never personally served with the complaint, he was on notice of some pending action when he received the Ex Parte Injunction. He failed to take any action to determine the bases for the injunction. Had he reviewed the court records, which included the injunction, it would have been crystal clear to him that a petition for absolute divorce had been filed.

---

**10.** We recognize that other courts have upheld various forms of substituted service in divorce cases where one spouse is absent from the state or cannot be located. *See United States v. Smith,* 398 F.2d 173 (3d Cir.1968) (service by publication along with notice mailed to wife's last known address which was verified by husband ten days before complaint was filed); *In re Marriage of Breen,* 560 S.W.2d 358 (Mo.Ct.App. 1977) (service by publication where wife abandoned the marital domicile with intention not to return and her present address was unknown); *Egbert v. Egbert,* 125 N.J.Super. 171, 309 A.2d 746 (Ch.Div.1973) (where husband's whereabouts were unknown substituted service on husband's mother was reasonably calculated to give actual notice where husband had been in contact by telephone with mother to prevent her involvement in the suit); *Gross v. Gross,* 56 Misc.2d 286, 288 N.Y.S.2d 674 (Sup.Ct.1968) (service by publication along with mailing summons and pleadings to husband's father); *In re Marriage of Campbell,* 37 Wash.App. 840, 683 P.2d 604 (1984) (service by publication where wife exercised reasonable diligence in seeking personal service on husband). *But see Polansky v. Richardson,* 351 F.Supp. 1066 (E.D.N.Y.1972) (service by publication not upheld where husband knew wife's address which was the former marital home); *In re Marriage of Johnston,* 33 Wash.App. 178, 653 P.2d 1329 (1982) (service by publication not upheld where husband resided in unknown location in California); *In re Marriage of Peace,* 631 S.W.2d 790 (Tex.Ct.App.1982) (service by publication not upheld where husband with due diligence could have ascertained his wife's whereabouts); *West v. West,* 82 Wis.2d 158, 262 N.W.2d 87 (Wis.1978) (same).

Instead of acting in a responsible way, he absconded from the State in an effort to avoid service. Specifically, appellant left the State, 'went who knows where[,]' and did not contact appellee after leaving."

93 Md.App. at 592, 613 A.2d at 1017. The intermediate appellate court's observations are not only without legal support, but are not supported by the record. First, Mr. Lohman was served with only the ex parte injunction; therefore, any representations made in the Petition for Ex Parte Injunction could not have put Mr. Lohman on notice of a pending divorce action. Second, we are not aware of any decision requiring the recipient of an ex parte injunction to review the court records to determine the bases for the injunction. Lastly, what we stated in *Little v. Miller*, 220 Md. at 316, 153 A.2d at 274–75, is appropriate here:

"Knowledge on the part of the defendant of the pendency of the suit and his consequent opportunity to come in and defend against the claim asserted, do not, of themselves, cure the defect of lack of personal service, and do not bar relief against a judgment obtained without personal service on the defendant. *Piedmont–Mt. Airy Guano Co. v. Merritt,* [154 Md. 226, 140 A. 62]; *Wilmer v. Epstein,* 116 Md. 140, 81 A. 379."

*See also Sheehy v. Sheehy,* 250 Md. at 184–85, 242 A.2d at 155; *Kartman v. Miliman,* 144 Md. at 505–07, 125 A. at 171.

In short, the circuit court only acquired *in personam* jurisdiction over Mr. Lohman once he filed his Petition to Adjudicate Marital Property.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY RESPONDENT.