REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 476

September Term, 2013

CONWELL LAW LLC

v.

MARY BETH TUNG, ET AL.

Eyler, Deborah S.
Nazarian,
Kenney, James A., III
    (Retired, Specially Assigned),

JJ.

Opinion by Nazarian, J.

Filed: February 25, 2015

* Judge Timothy E. Meredith did not participate, pursuant to Md. Rule 8-605.1, in the Court's decision to report this opinion.

This appeal arises from a suit brought in the Circuit Court for Anne Arundel County by a law firm, Conwell Law LLC (the "Firm"), against its former employee, Mary Beth Tung, an associated firm, BIO Intellectual Property Services LLC ("BIO"), and BIO's employee, Douglas Robinson.[1] The suit arose from the Firm's representation of Technical Furniture Group, LLC ("Technical Furniture") in matters before the United States Patent and Trademark Office (the "USPTO") Patent Trial and Appeal Board (the "Appeal Board"). Ms. Tung, then an employee of the Firm, served as lead counsel in those matters and Mr. Robinson as back-up counsel.[2] The subject matter of the suit ends up not being important for our purposes, though—between failures of service and failure to state a claim, and notwithstanding the volume of paper filed in the case, the suit never got past the initial pleading stage.

The circuit court dismissed the Firm's claims against both appellees with prejudice after finding that the Firm's initial (and later amended) complaint failed to state a claim against the BIO Defendants and that the Firm failed to effect service of process on Ms. Tung. On appeal, the Firm challenges these findings and raises for the first time issues concerning the appearance of impropriety in the circuit court. We find that the Firm failed to preserve its impropriety argument, reject the Firm's other arguments, and affirm.

---

[1] Because the Firm's claims against Mr. Robinson and BIO are tightly intertwined, we refer to the parties together as the "BIO Defendants."

[2] A party represented before the Appeal Board is required to "designate a lead counsel and a back-up counsel who can conduct business on behalf of the lead counsel." 37 C.F.R. § 42.10(a).

## I. BACKGROUND

The Firm filed its initial complaint against Ms. Tung, Mr. Robinson, and BIO on December 16, 2011.[3] It filed two versions of the complaint—one titled "COMPLAINT (*NON*-CONFIDENTIAL)" (the "Non-Confidential Complaint") and the other titled "COMPLAINT (CONFIDENTIAL)" (the "Confidential Complaint")—and explained in each version that only the Non-Confidential Complaint, which contained only a brief description of the parties and the claims, would be served on Ms. Tung and BIO. The Firm declined to serve the Confidential Complaint, which it claimed to have filed under seal, because it contained "extensive attorney-client and other extremely confidential information" regarding Technical Furniture.[4]

---

[3] The Firm raised the following causes of action against Ms. Tung: fraud, constructive fraud, "Breach of Fiduciary Duty, the Duty of Confidentiality, and the Duty of Loyalty," "Unfair Competition: Misappropriation of Trade Secrets," "Non-Disclosure, Concealment, Negligent Misrepresentation," "Injurious Falsehood," tortious interference with contract, tortious interference with business relations, replevin, and "Professional Negligence and Legal Malpractice (Neglect of Reasonable Duty)." The BIO Defendants were named only in the last count. This case represents only part of the parties' dispute. We considered in a separate appeal procedural issues raised in a professional neglience action filed by Technical Furniture and others against Ms. Tung, Mr. Robinson, and BIO and others. There we ultimately dismissed part of the appeal and affirmed the remainder of the circuit court's dismissal of Technical Furniture's claims for insufficient service of process and failure to state a claim. *See Technical Furniture Group, LLC, et al. v. Mary Beth Tung,* No. 95, Sept. Term 2013 (Md. App. March 13, 2014).

[4] Ms. Tung points out that the Firm's attempt to file under seal violated Maryland Rule 16-1009, which requires that a motion to seal or motion for protective order first be filed with the court to successfully seal a document. She argues that the Firm "circumvented the Maryland Rules by deciding for itself that the 'Confidential Complaint' should be 'filed under seal.'" We agree, but this issue does not come into play in this appeal.

On December 21, 2011, the circuit court issued original process directed to each defendant, which would expire 120 days after issuance (on April 19, 2012). The Firm, however, made no effort to serve the defendants in that time frame or for two months after the 120-day period expired. On May 24, 2012, as a result of the Firm's failure to effect service, the court issued a Notification of Contemplated Dismissal:

> Pursuant to Maryland Rule 2-507, this [proceeding] will be "DISMISSED FOR LACK OF JURISDICTION OR PROSECUTION WITHOUT PREJUDICE," 30 days after service of this notice unless, prior to that time, a written motion showing good cause to defer the entry of an order of dismissal is filed.

On June 18, 2012, the Firm requested that the court reissue summonses, which it did that day. Then, on June 22, the Firm filed a Notice of Service, explaining that each defendant had been served with summons and the *Non-Confidential* Complaint. That same day, the Firm also filed its Response to Rule 2-507 Notification and Motion to Defer Dismissal, in which it explained that it intentionally delayed the filing of its complaint to protect the interests of its client, Technical Furniture, and that it only filed the complaint when it did "because [filing] was necessitated by the statute of limitations." It continued that the Firm "was delayed in proceeding [with service] . . . for the same reason as the delays in the initial filing, that it was protecting client interests and advocating on their behalf, all on related matters that effected [*sic*] and impacted the causes of action in the instant lawsuit." On this basis, the Firm requested that the court defer dismissal, recognize that the Non-Confidential Complaint had been served, and stay the case.

3

On July 16, 2012, Ms. Tung filed a Motion to Dismiss pursuant to Rule 2-322(a), alleging insufficiency of process and service. She contended that the Firm, on June 19, 2012, delivered to her an incomplete copy of its complaint (the Non-Confidential Complaint), and that she had yet to be served with a complete copy of the complaint (the Confidential Complaint). She argued that as a party to the litigation, she was "entitled to access under Maryland Rule 16-1002(f)" to a full and complete copy of the complaint. The Firm never responded to this motion.

On July 24, 2012, the Firm filed a Motion to Stay, asking the court to stay the case until a similar case, involving "*joint clients of both* [the Firm] and Defendants," was resolved. (Emphasis in original.) The Firm contended that the court in the related case "issued an Order sealing all confidential client-related documents," and that "[f]actual and legal issues, including the amount of damages, are likely to be decided in [the related case], that affect the issues to be resolved in the instant lawsuit." Ms. Tung's response to the Firm's Motion to Stay, filed on July 30, 2012, incorporated her previously-filed Motion to Dismiss, noted that she *still* had not been served a complete copy of the complaint, and asked the court to rule on her Motion to Dismiss instead of staying the case. The court denied the Motion to Stay on August 6, 2012.

On August 20, 2012, Ms. Tung filed an opposition to the Firm's Motion to Defer Dismissal. She reiterated there much of what she had already argued: *first*, that the Firm had made no effort to serve the defendants with process for six months after filing its complaint;

4

*second*, that the Firm only attempted to serve the defendants at all after the court issued the Notice of Contemplated Dismissal; *third*, that the Firm still had not served a complete copy of the complaint on the defendants; *fourth*, that the Firm had not demonstrated good cause for its delay; and *finally*, that she had been prejudiced by the delay.

On August 28, 2012, the circuit court entered an order denying Ms. Tung's Motion to Dismiss, but found the Firm's initial service attempt (of the Non-Confidential Complaint) insufficient. Instead of dismissing the case, the court gave the Firm another opportunity to serve Ms. Tung:

> **ORDERED**, that [the Firm] shall re-serve a copy of the Complaint and all accompanying papers upon [Ms. Tung] and submit a new affidavit of service to the Court within ten (10) days from the date this Order is docketed. *If [the Firm] fails to comply with this Order, this action will be dismissed*.

(Emphasis added.) The BIO Defendants had also moved to dismiss on the same grounds raised by Ms. Tung on August 22, 2012, and on September 5, 2012, the court entered an identical order with respect to them. But despite these orders, the Firm never served Ms. Tung or the BIO Defendants directly. Instead, on September 6 and 7, the Firm served summons and the Confidential Complaint on *counsel* for each party.

On September 28, 2012, the court entered an order noting the Firm's failure to comply with its September 5, 2012 Order concerning the BIO Defendants and dismissing the case without prejudice as to them:

> Upon review of the file, the Court finds that an Order was entered on September 5, 2012, requiring [the Firm] to file a new

5

affidavit of service on [the BIO Defendants]. [The Firm] has failed to comply as directed. Therefore, this 26th day of September, 2012, by the Circuit Court for Anne Arundel County, hereby ORDERED, that [the Firm's] Complaint is dismissed without prejudice.

The court did not mention whether the case was being dismissed with respect to Ms. Tung.

On October 11, 2012, the Firm filed a Motion for Reconsideration requesting that the court revisit its dismissal of claims against the BIO Defendants entered on September 26, 2012. The Firm argued that its service on the BIO Defendants' *counsel* was sufficient and that dismissal was inappropriate. The Firm reasoned that service on counsel was appropriate because the BIO Defendants "accepted and acknowledged service, and that . . . Defendants had responded to the Complaint."

On October 24, 2012, Ms. Tung's counsel wrote a letter to Judge Davis-Loomis, the County Administrative Judge, asking that the case be specially assigned to a single judge to hear all open motions.

On October 31, 2012, before the court specially assigned the case, Ms. Tung filed a Motion to Dismiss for Failure to Comply with Terms of the Court's August 28, 2012 Order. The August 28, 2012 Order had directed the Firm to re-serve Ms. Tung with the *Confidential* Complaint within ten days of entry, but, as we explained, the Firm served *counsel* for Ms. Tung, not Ms. Tung herself. Ms. Tung argued that the Firm failed to comply with the August 28, 2012 Order because she never agreed to allow her counsel to accept service on her behalf, and that dismissal was appropriate.

6

The circuit court, through Judge Goetzke, entered an order on November 19, 2012, addressing both the Firm's Motion for Reconsideration of the September 26, 2012 Order (filed on October 11, 2012) and Ms. Tung's Motion to Dismiss for Failure to Comply with the August 28, 2012 Order. Judge Goetzke explained that the court "determined that, as of the date of this Order, it has no *in personam* jurisdiction over any defendant in [the] matter" and gave the Firm another chance to effect service:

> **ORDERED**, that this case is dismissed without prejudice as to all [defendants]; and it is,
>
> **ORDERED**, that [the Firm] may request <u>one additional summons</u> pursuant to Rule 2-122 (a) for each Defendant, provided the request is not made later than 7 days from the date on which this Order is docketed[5] ("Final Summons"); and it is,
>
> **ORDERED**, that this dismissal shall be stricken as to any Defendant over whom the court acquires *in personam* jurisdiction as a result of service pursuant to Rule 2-121 of the Final Summons for that Defendant; and it is,
>
> **ORDERED**, that on request of a Defendant, <u>an order of dismissal *with prejudice* shall be filed as to any Defendant over whom the court has not acquired *in personam* jurisdiction as set forth in the preceding paragraph</u>.

(Underlining supplied.)

Shortly thereafter, on December 5, 2012, Judge Davis-Loomis entered an Assignment Order assigning the case to Judge Caroom.

---

[5] The Order was docketed on November 21, 2012.

7

On January 28, 2013, the Firm filed an Affidavit of Service stating that "the Defendants were previously served the Confidential Complaint on September 6th and 7th, 2012," and providing documentation of subsequent service on counsel between January 22 and 24, 2013. The Firm concluded that "[a]ll *counsel* have been served." (Emphasis added.)

That same day, Judge Caroom, now specially assigned to the case, held a hearing on the open motions.[6] The parties discussed the November 19, 2012 Order issued by Judge Goetzke that dismissed the case without prejudice and provided the Firm one additional chance to serve the defendants:

> [COUNSEL FOR MS. TUNG]: . . . I would point out . . . that Judge Goetzke's order from November 21 said that Judge Goetzke had considered the motion for reconsideration and that as of that date the Court determined that, as of November 21, it had no in personam jurisdiction over any defendant after having considered the motion for reconsideration.
>
> And then went [on to] order [the Firm], with regard to all Defendants, to have summonses reissued within seven days. And then indicated that, upon request of the Defendant, an order for dismissal with prejudice would be filed as to any defendant as to whom service had not been acquired under, as Judge Goetzke termed it, in a defined term, the final summons.

---

[6] The court first addressed the Firm's Motion for Reconsideration of the November 19, 2012 Order, which found that the court had no personal jurisdiction over any of the Defendants. Judge Caroom offered the Firm an opportunity to request a hearing before Judge Goetzke on issues flowing from the order he issued on November 19, 2012, and specifically whether the Firm had complied with the order to complete service on all the defendants. None of the parties sought to have their motions heard by Judge Goetzke.

THE COURT: And set a deadline of January . . . 28, meaning it needed to be done before today?

[COUNSEL FOR MS. TUNG]: Right. Well, they needed to be issued by [November 28] and . . . that has not occurred. The same thing occurred with the motion for reconsideration. There were exhibits from [the Firm] saying we mailed them to counsel for Ms. Tung. *Mailing to counsel of the summons is not service.*

Judge Goetzke ordered that they be served pursuant to Maryland Rule 2-121. And Maryland Rule 2-121 expressly delineates the means of service, as I am sure you are aware, and mailing them to counsel is not service.

(Emphasis added.) In response, the Firm argued that its service of the Confidential Complaint and Final Summons shortly before the hearing satisfied Judge Goetzke's Order:

[COUNSEL FOR THE FIRM]:[7] I served personally last week via certified mail all the Defendants. I have green cards right here with their signatures.

Last week, I did file an affidavit of service with the Court for both cases, Conwell Law and Technical Furniture Group. I have a copy of the Technical Furniture Group case with the date stamped right here.

\* \* \*

I would also like to point out, first of all, it was the confidential complaint that was served in January to all Defendants. I would also like to mention that this was not—

THE COURT: Meaning for which you have the green cards?

---

[7] Although the transcript shows that counsel for Ms. Tung was speaking here, the content of the statements made here show that counsel for *the Firm* was actually speaking. The transcript is rife with similar errors, which we have reconciled in this opinion where necessary.

[COUNSEL FOR THE FIRM]: Yes. Yes, that is what this is from.

THE COURT: Okay, so let me invite you to show—I am not sure if they have seen it any more than I have, the green cards and the return of service that you are preparing to file today.

[COUNSEL FOR MS. TUNG]:[8] Your Honor, I think the misunderstanding here is that these green cards show that—well, read it. I don't know if it is a misunderstanding or not. I thought I made all positions clear. *The green cards reflect certified mail, me and my partner*.

THE COURT: *Not to the parties individually?*

[COUNSEL FOR MS. TUNG]: *Not to the party*. And mailing or delivery by a process server or by certified mail, the counsel is not serviced.

THE COURT: Okay. So let me go back to [Counsel for the Firm]. I thought you just said that it was—that these were green cards signed by each of the Defendants individually.

[COUNSEL FOR THE FIRM]: I am sorry. *It was not by the Defendants, by defense counsel*, given that—

THE COURT: By counsel.

[COUNSEL FOR THE FIRM]: —*by counsel. That is correct*.

(Emphasis added.) The parties then discussed whether service upon counsel satisfied Rule 2-121(a):

---

[8] The transcript does not indicate which party's counsel is speaking here, as the place for counsel's name after "Mr." is left blank. However, again, we are able to recognize from the statement's content that counsel for Ms. Tung is speaking here.

10

[COUNSEL FOR THE FIRM]: Given that all counsel had entered appearances with regard to each of those cases. It seemed, under the rule, that counsel could be served directly. Counsel of record, you know, in the system, and had to represent their clients with regard to these cases.

[COUNSEL FOR MS. TUNG]: Well, let me just point out, Your Honor, that only, as Maryland Rule 2-321(a) states, "Only documents other than original pleadings in process can be served on counsel, after counsel has entered an appearance."

And Maryland Rule 2-121(a) specifically sets forth the three types of in personam service. Delivery to the person to be served, or leaving it at the person's dwelling, house, or usual place of abode with a person, the resident of a suitable age or discretion, or mailing to the person to be served a copy of the summons, complaint, et cetera, et cetera, by a certified mail return receipt requested.

The Firm's counsel argued in response that service on counsel was appropriate because he had received letters from counsel for the Defendants "[t]hat specifically stated that they would agree to accept [service]," and that counsel had been representing and acting as agents for their clients in this case. But when asked by the court to produce the letters, counsel could not do so, and Ms. Tung's counsel pointed out that "there is no correspondence from [them] agreeing to accept service." At the same time, however, counsel for the BIO Defendants *did* acknowledge such an agreement:

[COUNSEL FOR BIO DEFENDANTS]: We will accept service of the [Firm] complaint, because we prefer to have it decided on the merits. We are just going to move to dismiss, but at the appropriate time. So that is fine. We will accept service and move to dismiss at the appropriate time.

11

Ms. Tung then asked the court to dismiss the Firm's claim with prejudice because the Firm failed to comply with Judge Goetzke's November 19, 2012 Order, which provided that a defendant could request dismissal with prejudice if the Firm failed to complete service upon that defendant. The court agreed to do so:

> THE COURT: Okay. Obviously [the Firm's counsel], your position was that Ms. Tung's counsel agreed to accept service also, but since today is the motion hearing, we don't have the document confirming that. I am inclined to grant their motion to make it as to this timely dismissal with prejudice and to direct the Court to put in the hearing sheet that the [BIO Defendants] . . . have agreed to accept service.

The court also noted that it would consider altering the order if the Firm's counsel produced the letter in which Ms. Tung's counsel agreed to accept service on her behalf:

> THE COURT: If [the Firm's counsel] go back to the office and they find the missing letters in which counsel for Mary Tung say we agree to accept service of the full complaint, then there could be a motion to reconsider on the motion to reconsider, but I am not going to, at this point, hold my breath on that.
>
> We will assume that the ruling that I just made is what is going to be going on with this case going forward.

On January 30, 2013, Judge Caroom entered an order noting the court's denial of the Firm's Motion for Reconsideration and the BIO Defendants' Motion to Dismiss (reasoning that counsel for each had "agreed to accept service on behalf of the defendants"), and its decision to grant Ms. Tung's Motion to Dismiss.

On February 20, 2013, the BIO Defendants filed a Motion to Dismiss, alleging that the Firm failed to state a claim upon which relief could be granted, or in the alternative, that,

12

as a result of Ms. Tung's dismissal, the Firm had failed to properly join a necessary party.

That same day, the Firm filed a Motion for Reconsideration of the January 30, 2013 Order,

arguing that dismissal of its suit against Ms. Tung was inappropriate. Ms. Tung filed an

Opposition to the Firm's Motion for Reconsideration on March 8, 2013.[9]

The circuit court held a hearing on these motions on March 18, 2013. During the

hearing, the trial judge walked through the timeline of this case, found no justification for the

delay in service, presumed prejudice from the delay, and ultimately denied the Firm's Motion

for Reconsideration and dismissed its suit against Ms. Tung *with* prejudice:

> [THE COURT]: . . . In this case, the [Firm] case, the Court thinks that it is very comparable to the situation in *Reed v. Cagan*, 128 Md. App. 641, where there was no real explanation for the initial delay [in service], as filed in late 2011.
>
> Summonses are issued. Nothing happens for six months. The Court issues the notice of contemplated dismissal. The Defense moves to dismiss for lack of service. There are two motions to dismiss, which are considered by the Court in August and September for different Defendants, each giving additional time for service. That additional time for service is not used.
>
> There are two dismissals, September 28th, . . . November 21st. Those dismissals were [without] prejudice. But again, potentially with the opportunity to seek to reopen and reserve.
>
> So in effect the Court has given many, many warnings in this case that the case could be dismissed, the [Firm] versus Tung, for lack of adequate service.

---

[9] The Firm also filed an amended complaint on March 8, 2013. The Firm failed to include a comparison copy, as was required by Rule 2-341(e).

And in terms of whether there is some justification for the delay, the Court really doesn't find any justification for the delay, *because all of the problems were problems basically of Plaintiffs' own making.*

*The delay was your own making.* The private [versus] public version of the complaint, or confidential or non-confidential version of the complaint, however you want to call it, *the issue was of your own making*.

The, I think, misconstrue [sic] of the communications with counsel as to whether they would accept service or serve themselves and just take notice of what was in the Court's file instead of actually receiving it as required by the rules, *was a problem of your own making*.

The Court asked if you had written documentation that counsel had agreed to accept some other arrangement and that has not been provided to the Court's satisfaction.

*So I think really there is no justification for the delay. The prejudice is presumed*—the Court could infer actual prejudice in terms of all of the legal services that the Defense has had to pay for, just litigating on this one issue, *all of Plaintiffs' making*.

So the Court is going to deny the motion to reconsider in the Firm [versus] Tung case. . . . And recognize that that dismissal has become one which is *with prejudice* after the passage of more than 30 days.

(Emphasis added.) On March 22, 2013, Judge Caroom entered an order denying the Firm's

Motion for Reconsideration, dismissing the Firm's case against Ms. Tung, and dismissing

the Firm's case against the BIO Defendants for failure to state a claim and based on the

dismissal of Ms. Tung, all dismissals with prejudice. The Firm appealed from that order.

14

## II. DISCUSSION

The Firm raises the following questions for our review:

1. Whether the Appellees had been served and jurisdiction had been conferred.

2. Whether the trial judge erred in his two orders dismissing the case against all Appellees.

3. Whether the combined actions of two judges gave the appearance of impropriety, partiality, and prejudicial influence.

We affirm the circuit court's decision to dismiss the Firm's complaint against both Ms. Tung and the BIO Defendants. The Firm did not effect proper service upon Ms. Tung, and despite multiple opportunities, the Firm failed to cure this jurisdictional defect, so dismissal was proper under both Rules 2-121(a) and 2-507(b). And although the Firm effected service upon the BIO Defendants, the court appropriately dismissed its complaint for failure to state a claim because the complaint failed to address a necessary predicate of its legal malpractice claim—the existence of an attorney-client relationship between the Firm and the BIO Defendants.[10] Finally, the Firm failed to preserve the issue of judicial impropriety for review.

---

[10] Because, as we explain, the circuit court appropriately dismissed the Firm's suit against the BIO Defendants on the basis of the Firm's failure to state a claim upon which relief could be granted, we need not address whether Ms. Tung was a necessary party or, in turn, whether the dismissal of the Firm's suit against her warranted dismissal of its suit against the BIO Defendants.

15

**A.** **The Circuit Court Properly Dismissed The Firm's Claims Against Ms. Tung For Insufficient Service Of Process.**

"'It is fundamental that before a court may impose upon a defendant a personal liability or obligation in favor of the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant.'" *Flanagan v. Dep't of Human Res.*, 412 Md. 616, 623-24 (2010) (quoting *Lohman v. Lohman*, 331 Md. 113, 125 (1993)). A court obtains *in personam* jurisdiction over a defendant when that defendant is "'notified of the proceedings by proper summons.'" *Id.* at 624 (quoting *Lohman*, 331 Md. at 130). "[T]he court has no jurisdiction over [a defendant] until such service is properly accomplished," or until service "'is waived by a voluntary appearance by the defendant, either personally or through a duly authorized attorney.'" *Id.* A party's failure to comply with the Maryland Rules governing service of process "constitutes a jurisdictional defect that prevents a court from exercising personal jurisdiction over the defendant." *Id.* (citing *Lohman*, 331 Md. at 130).

"The 'abuse of discretion' standard of review is applicable to the issue of whether an appellate court should reverse the Circuit Court's decision to dismiss an action for 'lack of jurisdiction.'" *Hariri v. Dahne*, 412 Md. 674, 686 (2010). "'[T]here is an abuse of discretion where no reasonable person would take the view adopted by the [trial court] . . . or when the court acts without reference to any guiding principles.'" *Id.* at 687 (internal quotation marks omitted) (quoting *Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 418 (2007)). "In sum, to be reversed '[t]he decision under consideration has to be well removed from any center mark

imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'" *Id.* (quoting *Pasteur, Inc.*, 396 Md. at 419).

### 1. The Firm did not effectively serve process on Ms. Tung.

The Firm contends that no jurisdictional defect existed, and that dismissal was improper, because Ms. Tung and her counsel had been personally served with summons. The Firm made three attempts to serve Ms. Tung: *first*, on June 19, 2012, by delivery of the Non-Confidential Complaint to Ms. Tung; *second*, on September 6 and 7, 2012, by delivery of the Confidential Complaint to Ms. Tung's counsel; and *third*, on January 18, 2013, again by delivery of the Confidential Complaint to Ms. Tung's counsel. But for the circuit court to obtain personal jurisdiction over Ms. Tung, the Firm was required to effect service of process in accordance with Rule 2-121(a). *See Lohman*, 331 Md. at 130:

> Service of process may be made . . . (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summon, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery."

Md. Rule 2-121(a). None of the Firm's attempts to serve Ms. Tung complied with this rule.

The Firm's first attempt to serve Ms. Tung—delivery of the summons and Non-Confidential Complaint to her—did not amount to effective service. Effective service under Rule 2-121(a) requires delivery of "a copy of the summons, *complaint*, and all other papers

filed with it." Md. Rule 2-121(a) (emphasis added).  Delivery of the Non-Confidential Complaint did not satisfy this rule because that version of the complaint was not the complete version of the complaint filed with the court.  Service of the complaint filed with the court is necessary because "'[t]he purpose of service of process is to give the defendant fair notice of the action against him and the resulting fair opportunity to be heard.'" *Mooring v. Kaufman*, 297 Md. 342, 350 (1983) (quoting 1964 Md. Laws, Chap. 95); *see also West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1529 (9th Cir. 1990) ("[S]ervice of an incomplete draft complaint which was seven pages shorter than the complaint filed cannot be deemed to constitute compliance with [Fed.R.Civ.P. 4(m)[11]] because that Rule requires service of the filed complaint."). The Non-Confidential Complaint, although also filed with the court, contained only "a description of the parties and the claims for notice purposes," and could not provide Ms. Tung with fair notice of the action against her. Only the Confidential Complaint could provide such notice.

The Firm's second and third attempts to serve Ms. Tung—delivery of the summons and Confidential Complaint to her counsel—also did not amount to effective service. Although a plaintiff, in certain circumstances, can serve an individual by service upon an

---

[11] The Ninth Circuit, in *West Coast Theater*, found that service of a draft complaint did not comply with Federal Rule 4(j), the predecessor rule to current Rule 4(m).  897 F.2d at 1529.  Rule 4(m) mirrors Rule 2-507(b): each rule provides that a plaintiff's failure to serve a defendant precludes a court from obtaining jurisdiction over that defendant, and that the failure to serve a defendant within 120 days of filing of the complaint warrants dismissal of the case without prejudice.

18

agent, that agent must be "*authorized* by appointment or by law to receive service of process for that individual," Md. Rule 2-124(b) (emphasis added), and no such authorization existed here. Although, at the January 28, 2013 hearing, the Firm claimed to have received a letter from Ms. Tung's counsel agreeing to accept service on her behalf, the Firm could not produce evidence of Ms. Tung's authorization when the court asked for it:

> THE COURT: Let me ask you to go—and if you are saying that there is correspondence from counsel by which they agree to accept service, go ahead and pull that out and we can make that an exhibit for today. Show it to opposing counsel and see if they agree or have anything else that the Court should consider.
>
> (Pause.)
>
> [COUNSEL FOR THE FIRM]: Your Honor, obviously we have a lot of paperwork to go through.
>
>                     \*     \*     \*
>
> [COUNSEL FOR THE FIRM]: It appears we don't have the letter with us in Court right now, Your Honor. However, we would be happy to go back to our office with the more complete record and provide that to you.
>
> [COUNSEL FOR MS. TUNG]: On behalf of my firm, Your Honor. This represents Ms. Tung. You know, there is no correspondence from us agreeing to accept service.

And without authorization from Ms. Tung that her counsel could be served on her behalf, the Firm's attempts to serve her counsel were ineffective.

The Firm also argues that service of the Confidential Complaint on Ms. Tung's counsel was proper because counsel had entered a general appearance. This argument flows

19

from an incorrect legal premise. An attorney's appearance on behalf of a client affects only filing of pleadings *other than* original pleadings. Service of an *original pleading*, "the first pleading filed in an action against a defendant," Md. Rule 1-202(s), is governed by Rule 2-121(a), the rule applicable to service of process. *See Francz v. Francz*, 157 Md. App. 676, 688 (2004). Service of pleadings and papers *other than original pleadings*, on the other hand, is governed by Rule 1-321, which does, in fact, permit service upon an attorney who has entered an appearance. *See* Rule 1-321(a).

Here, the Firm argues that its service of the Confidential Complaint, its *original* pleading, was properly made on counsel because counsel had entered an appearance. But, as we explained, the rules governing service of process (applicable to service of original pleadings, *see Francz*, 157 Md. App. at 688) do not permit service of an individual by service upon counsel without prior authorization. *See* Md. Rule 2-124(b). So even if Ms. Tung's counsel had entered an appearance, and we make no findings in that regard, the Firm still needed to serve the Confidential Complaint on Ms. Tung herself.

The Firm's failure to effect service on Ms. Tung left the circuit court without personal jurisdiction over her. The only other possible avenue through which the court could obtain personal jurisdiction was through a waiver of service and consent by Ms. Tung. *See Flanagan*, 412 Md. at 624 ("[T]here can be no judgment nor decree *in personam* unless the defendant has been notified of the proceedings by proper summons, for the court has no jurisdiction over him until such service is properly accomplished, or is waived by a voluntary

20

appearance by the defendant, either personally or through a duly authorized attorney." (quoting *Lohman*, 331 Md. at 130)). As we explain next, no such waiver or consent occurred.

### 2. Ms. Tung did not consent to jurisdiction or waive her right to service of process.

The Firm argues next that "[j]urisdiction is conferred [and objections to service issues are waived] when a party makes a voluntary appearance," and that Ms. Tung entered a voluntary appearance through two avenues: *first*, by failing to comply with Rule 2-322(a), which, according to the Firm, "requires that no motion or pleading . . . be filed before any motion to dismiss is filed"; and *second*, by filing "a pleading addressing in any way any subject other than jurisdiction." The Firm's arguments are premised upon both an incorrect timeline of this case and a misunderstanding of the law.

Assuming for the moment that the Firm was correct (which, as detailed below, is not the case), the Firm would have to establish that Ms. Tung filed a pleading or motion[12] before she filed her Rule 2-322(a) Motion to Dismiss. In support of this argument, the Firm contends that "the first pleading filed by [Ms.] Tung was an Opposition to Motion to Defer Dismissal. Thus, as of August [20], 2012 when that motion was filed and served, [Ms.] Tung had waived Rule 2-322(a) defenses and had voluntarily consented to the jurisdiction of the court." The docket tells a different story: Ms. Tung filed her Motion to Dismiss, raising Rule

---

[12] As we explain later, filing an *answer* waives the defenses listed in Rule 2-322(a).

21

2-322(a) defenses, on July 16, 2012, more than a month before she filed her Opposition to the Firm's Motion to Defer Dismissal on August 20, 2012.[13] So on this basis alone, the Firm's argument that Ms. Tung consented to jurisdiction by failing to raise Rule 2-322(a) defenses in a motion to dismiss filed before any other *pleading or motion* fails.

But we don't even get to that hypothetical because the Firm is wrong about the law. The Firm argues that a defendant waives Rule 2-322(a) defenses by filing any *motion or pleading* before a motion to dismiss raising those defenses. The Firm is incorrect. Instead, a party waives the defenses listed in Rule 2-322(a) only when that party files an *answer* before raising those defenses. *See* Md. Rule 2-322(a) ("The following defenses shall be made by motion to dismiss filed before the *answer* . . . : (1) lack of jurisdiction over the person, . . . (3) insufficiency of process, and (4) insufficiency of service of process. *If not so made and the answer is filed, these defenses are waived*." (Emphasis added.)).[14]

---

[13] The Firm also cannot plead ignorance here—it filed a motion in response to Ms. Tung's Motion to Dismiss on August 17, 2012, before she filed her Opposition to the Firm's Motion to Defer Dismissal.

[14] The Firm relies on *Chapman v. Kamara*, 356 Md. 426 (1999), and *LVI Environmental Services, Inc. v. Academy of IRM*, 106 Md. App. 699 (1995), in support of its waiver argument. But *Chapman* does not stand for the proposition that the filing of any *pleading* waives the defenses listed in Rule 2-322(a), *see* 356 Md. at 438 ("Once a party files an answer without raising the defense of insufficient service of process, that defense ordinarily is waived." (citing Md. Rule 2-322(a)). As to *LVI* (and a prior case on which the *LVI* Court relied, *McCormick v. St. Francis de Sales Church*, 219 Md. 422, 428 (1959)), these cases suggest simply that under some circumstances, a party may be estopped from asserting lack of personal jurisdiction when that party has sought affirmative relief from the court that could only be granted if the court were to have jurisdiction.

(continued...)

22

We recognized this principle in *Smith v. Cylus*, 147 Md. App. 78 (2002), and rejected the same argument the Firm raises now. In *Smith*, the appellant argued that the appellee had "waived the defense of improper venue when [the appellee] served [appellant] with a request for admissions" because "[p]ursuant to Rule 2-322, the issue of venue is a mandatory defense which must be plead before *any initial filing by the defendant*." *Id.* at 80 (emphasis added) (internal quotation marks omitted). We rejected this argument because only an *answer* waives the mandatory defenses listed in Rule 2-322(a):

> While appellant is correct that Rule 2-322 governs mandatory defenses, she misunderstands the rule. Rule 2-322(a) reads: "The following defenses shall be made by motion to dismiss filed before the *answer*, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue[, (3) insufficiency of process, and (4) insufficiency of service of process]." (Emphasis added.) *In the case sub judice, appellee never filed an answer. Therefore, she has not waived the defense of improper venue.*

*Id.* at 81 (emphasis added).[15] So even if Ms. Tung had filed her Motion to Dismiss *after* the Opposition Motion, which she didn't, she *still* would not have waived her right to assert jurisdictional defenses because she had yet to file an answer.

---

[14](...continued)
This decision simply prohibits a litigant from using certain defenses as a shield even as he or she seeks dismissal wielding the sword of a jurisdictional attack.

[15] We pointed out in *Smith* that this understanding of Rule 2-322 is premised upon "a predecessor to that rule that required a motion to dismiss [asserting a mandatory defense] be made prior to filing of any *pleading*." 147 Md. App. at 81 n.1.

23

### 3.     The Firm's failure to serve Ms. Tung warranted dismissal.

The Firm contends *next* that dismissal of its case against Ms. Tung was improper even if its attempts to serve her were insufficient.  It raises three arguments: *first*, that dismissal was an inappropriate remedy; *second*, that the circuit court improperly considered Rule 2-507 in denying its Motion for Reconsideration; and *third*, that Ms. Tung failed to demonstrate sufficient prejudice to support dismissal.

### i.     Dismissal is an appropriate remedy.

The Firm's *first* contention, that dismissal was improper even if its service on Ms. Tung was insufficient, fails as a matter of law.[16]  Quoting *Flanagan v. Department of Human Resources*, 412 Md. 616 (2010), the Firm argues that "[d]ismissal is not an automatic remedy for delayed service." *Id.* at 631. The Firm reads *Flanagan* selectively and ignores the context of the language it quotes.  In *Flanagan*, the Court of Appeals was not reviewing a circuit court's decision to dismiss a suit for service defects, as we are here—it was responding to a request for dismissal for insufficient service raised for the first time on appeal.  The Court recognized that although the appellant was not served in a timely manner under Rule 2-507(b), an *appellate court* is not empowered to dismiss a case for untimely service because "[d]ismissal is not an automatic remedy for delayed service." *Id.*  The Court explained instead that the decision whether to dismiss for delayed service "rests in the sound discretion

---

[16] The Firm's argument on this point is limited.  In support, it provides only brief quotations from three cases and it does not apply the law it cites to the facts.

of a trial judge in the first instance, based on his or her weighing of the balance of the rights, interests, and reasons of the parties for the delay and the public demand for prompt resolution of litigation." *Id.* (citing *Langrall, Muir & Noppinger v. Gladding*, 282 Md. 397, 400-01 (1978)); *see also Reed v. Cagan*, 128 Md. App. 641, 650 (1999) ("Appellee was not served with process for approximately two years from the time the complaint was filed and the original process was issued against him. Thus, there is no question that the case was subject to dismissal, *in the court's discretion*." (Emphasis added.)). The circuit court, finding that the Firm had not served Ms. Tung, was empowered in its discretion to dismiss the case, and we see no abuse of that discretion here.

### ii. Dismissal under either Rule 2-121(a) or Rule 2-507(b) was proper.

The parties disagree over the rule upon which the circuit court relied in dismissing the case. The Firm claims that dismissal pursuant to Rule 2-322(a) (for insufficiency of service) was all that was at issue in its Motion for Reconsideration and that the court erred by denying its motion after the March 18, 2013 hearing on the basis of Rule 2-507(b) (for lack of jurisdiction). Ms. Tung counters that the Firm re-raised issues relating to Rule 2-507(b) in its Motion for Reconsideration. Although the court could perhaps have stated more clearly the rule on which it relied, we need not resolve the question because the Firm loses both ways: at no point did the Firm effect service upon Ms. Tung in compliance with Rule 2-121(a), which supports dismissal under Rule 2-322(a), and the Firm's service failure created a jurisdictional defect, which supports dismissal under Rule 2-507(b).

Dismissal pursuant to Rule 2-322(a) was proper because, as we established above, the Firm never properly served Ms. Tung in accordance with Rule 2-121(a). The Firm's first service failure (delivery of the Non-Confidential Complaint to Ms. Tung) was the basis for Ms. Tung's first Rule 2-322(a) Motion to Dismiss, filed on July 16, 2012. Although it is undisputed that this service attempt did not comply with Rule 2-121(a), the court had the authority to "dismiss the action or grant such lesser or different relief as may be appropriate," Md. Rule 2-322(c), and, in the August 28, 2012 Order, the court elected to grant different relief. Specifically, the court denied Ms. Tung's Motion but ordered, *first*, that the Firm was to "re-serve a copy of the Complaint and all accompanying papers upon [Ms.] Tung, and submit a new affidavit of service to the Court within ten (10) days from the date this Order is docketed," and *second*, that if the Firm again failed to serve Ms. Tung, the action would be dismissed. The Firm conceded at oral argument that it never personally served Ms. Tung after this point, but it argues that its delivery of the summons and Confidential Complaint to Ms. Tung's counsel shortly thereafter in September 2012 satisfied the August 28, 2012 Order. It did not, and the circuit court properly made this finding in its November 21, 2012 order. Even so, the court gave the Firm *one more chance*:

> [T]he Court having determined that, as of the date of this Order, it has no *in personam* jurisdiction over any defendant in this matter, it is this 19th day of November 2012, by the Circuit Court for Anne Arundel County:
>
> **ORDERED**, that this case is dismissed without prejudice as to all persons named as a defendant to this action as of the date of this order (individually, "Defendant"); and it is,

26

> **ORDERED**, that Plaintiff may request one additional summons pursuant to Rule 2-112(a) for each Defendant, provided the request is made not later than 7 days from the date on which this Order is docketed ("Final Summons"); and it is,
>
> **ORDERED**, that this dismissal shall be stricken as to any Defendant over whom the court acquires *in personam* jurisdiction as a result of service pursuant to Rule 2-121 of the Final Summons for that Defendant; and it is,
>
> **ORDERED**, that on request of a Defendant, an order of dismissal *with prejudice* shall be filed as to any Defendant over whom the court has not acquired *in personam* jurisdiction as set forth in the preceding paragraph . . . .

But the Firm again delivered the summons and Confidential Complaint to Ms. Tung's counsel on January 18, 2013, and the court, after the January 28, 2013 hearing, reached the same conclusion. Following up on its November 21, 2012 Order, the court entered an order on January 30, 2013, dismissing the Firm's case *with prejudice*, an appropriate remedy under Rule 2-322(a).[17]

The court would also have been justified in dismissing the Firm's case pursuant to Rule 2-507(b), which governs dismissal for lack of jurisdiction.[18] On appeal, however, the

---

[17] Although the order doesn't note this explicitly, the court also declared as moot the motions to dismiss for failure to comply with Rule 2-507.

[18] Rule 2-507(b) governs dismissal for lack of jurisdiction and reads as follows:

> An action against any defendant who has not been served or over whom the court has not otherwise acquired jurisdiction is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant.

(continued...)

27

Firm argues that the court's consideration of Rule 2-507(b) during the March 18, 2013 hearing on its Motion for Reconsideration was inappropriate for two reasons: *first*, because the court considered the issues despite finding them to be moot in its January 30, 2013 Order, and *second*, because dismissal pursuant to Rule 2-507(b) cannot be pursued by a party, as it is only a procedural tool to be used by the clerk of the court. Each argument is unavailing.

It was *the Firm* that re-raised arguments relating to Rule 2-507(b) in its Motion for Reconsideration of the January 30, 2013 Order, despite the court's finding in that order that Rule 2-507(b) issues were moot. In its motion, the Firm argued that the court "should not require dismissal in the instant case, regardless of whether the multiple personal and representative services made were proper, because Defendant Tung has not been prejudiced pursuant to Rule 2-507." Presumably in response to this argument, the court, at the hearing on the Motion for Reconsideration, addressed several issues relevant to a Rule 2-507(b) analysis—specifically the Firm's justification for delay and prejudice to Ms. Tung as a result of the delay.

The Firm also argues that the court wrongly mingled consideration of the Rule 2-507 and Rule 2-322(a) motions to dismiss. Specifically, the Firm relies on *Thomas v. Ramsburg*, 99 Md. App. 395, 399 (1994), and contends that the court erred by considering Rule 2-507(b) as "an offensive weapon for the defendants, instead of an administrative procedure for the

[18](...continued)

Md. Rule 2-507(b).

28

clerk." It reasons, again relying on *Thomas*, that the language of Rule 2-507 does not contemplate motions filed by parties directly with the court. The Firm's contention fails for two reasons: *first*, Rule 2-507 did not arise here from a motion Ms. Tung filed with the court, and *second*, even if it had, the court's consideration of Rule 2-507(b) in the scope of a Rule 2-322(a) motion to dismiss would have been appropriate.

With respect to the first basis, the Firm overlooks that fact that Ms. Tung never used Rule 2-507 as an "offensive weapon," as she never filed a motion to dismiss raising issues concerning Rule 2-507(b). Rule 2-507(b) was only considered by the court through its own initiative and through arguments raised by the Firm. That rule arose initially in the Notification of Contemplated Dismissal that the court issued administratively. Ms. Tung's first Motion to Dismiss, filed on July 16, 2012, was filed pursuant to Rule 2-322(a) and concerned insufficiency of service under Rule 2-121(a), *not* jurisdictional defects, and her second Motion to Dismiss, filed on October 31, 2012, relied exclusively on the Firm's failure to comply with the court's order entered on August 28, 2012. Only after the court entered the January 30, 2013 Order dismissing the case with prejudice *pursuant to Rule 2-322(a)* did the court look to Rule 2-507. And it only did so because the Firm raised the issue in its Motion for Reconsideration.

Also, even if Ms. Tung had raised Rule 2-507(b) arguments in a Rule 2-322(a) motion to dismiss, the court could have properly considered such a motion. The Firm reads *Thomas* too broadly to the contrary. *Thomas* provides that "[t]he plain language of Rule 2-507 does

not directly anticipate parties to an action filing motions to dismiss for lack of prosecution,"

and that "only . . . the clerk of the court should initiate such dismissal proceedings." 99 Md.

App. at 399. But *Thomas* refers to subsection (c) of Rule 2-507, governing lack of

*prosecution*, whereas, here, the court's consideration of Rule 2-507 was focused upon

subsection (b), governing lack of *jurisdiction*. A nearly identical argument arose in *Reed v.*

*Cagan,*128 Md. App. 641 (1999), and the Court's reasoning in rejecting the Firm's argument

applies equally here:

> Appellant argues that appellee had no right to file a motion to dismiss [pursuant to Rule 2-322(a)] directly with the court based on Rule 2-507(b), and that for the Rule to have any application to appellee's motion to dismiss, the clerk must have initiated the dismissal, either on its own, or after a request by appellee. Appellant relies on *Thomas v. Ramsburg*, 99 Md. App. 395 (1994), for this proposition. We find *Thomas* to be inapposite and disagree with appellant's conclusion.
>
> \*　　\*　　\*
>
> In *Thomas*, this Court addressed the appropriate procedure when a defendant moved to dismiss a case for lack of prosecution under Rule 2-507(c).
>
> \*　　\*　　\*
>
> In *Thomas*, the plaintiff filed his complaint, defendant answered, and discovery ensued. *See Thomas*, 99 Md. App. at 397. When more than a year had passed without any docket entries in the case, the defendant moved to have the case dismissed pursuant to Rule 2-507(c). *See id.* The trial court granted the motion and the plaintiff appealed. *See id.* We held that a defendant seeking to have a case dismissed for lack of prosecution under subsection (c) had no right to file a motion directly with the court, and that the dismissal had to be initiated by the clerk's

30

filing a notice of contemplated dismissal pursuant to Rule 2-507(d). *See id.* at 410-11.

\* \* \*

The distinction between the present case and *Thomas* lies in . . . the difference between a dismissal under subsection (c) for lack of prosecution, and one under subsection (b) for lack of jurisdiction . . . . *Thomas* involved a dismissal under subsection (c) of Rule 2-507, for the plaintiff's failure to prosecute the case. A dismissal under subsection (b) of Rule 2-507 for lack of jurisdiction arising from a failure to serve the defendant raises different concerns, and should be governed by different standards than a dismissal for lack of prosecution under subsection (c).

*Id.* at 649-52. A Rule 2-507(b) defense for lack of jurisdiction *could*, therefore, have been raised through a motion filed pursuant to Rule 2-322(a), *see id.* at 655, but that never happened here. Ms. Tung's motions to dismiss relied exclusively on the Firm's failure to comply with the service requirements of Rule 2-121(a).

The court nevertheless considered Rule 2-507(b) during the March 18, 2013 hearing, and the Firm argues that the court failed to require a showing of prejudice by Ms. Tung. As before, we addressed a similar set of circumstances in *Cagan,* 128 Md. App. 641. In that case, like here, the appellant argued "that the trial court erred in dismissing his suit on the ground of a delay in service pursuant to Rule 2-507(b) because appellee failed to prove prejudice." *Id.* at 647. Although the trial court in that case "did not identify the specifics of how the prejudice to appellee from the two-year delay in service manifested itself," the Court

31

"[did] not consider a specific demonstration of prejudice to be required."[19] *Id.* at 648. We explained that a "more specific delineation and thereby a stronger showing of prejudice might be appropriate had appellant identified *any justification* for his failure to serve appellant for two years." *Id.* at 649 (emphasis added). We found that "appellant did not proffer any justification for his two-year delay in service" or any "reason why he would have had any difficulty serving appellee," despite the fact "that he was aware of appellee's status as a practicing attorney in Baltimore with offices within a few blocks of the circuit court." *Id.* at 648.

The same circumstances are present here. The Firm was well aware of Ms. Tung's status as a practicing attorney and knew her address, but it still did not provide a valid justification for failing to serve her. And like *Cagan*, the trial court did not explain its finding of prejudice, but presumed prejudice from the circumstances. (The court stated that it "could infer actual prejudice in terms of all the legal services that the Defense has had to pay for, just litigating on this one issue, all of Plaintiffs' making.") Moreover, like *Cagan*, the Firm brought suit shortly before the expiration of the statute of limitations, but unlike *Cagan*, where the appellee was served two years from filing of the complaint, *id.* at 649, service *never* occurred here. We do not require a more specific delineation of prejudice: as

---

[19] In *Cagan*, the Court found that prejudice existed as a result of the fact that appellee missed opportunities to engage in discovery undertaken by other parties to that litigation and "from the fact that suit was not filed until three days before expiration of the statute of limitations, and thus service was not achieved until almost two years after the limitations period." *Cagan*, 128 Md. App. at 648-49.

we held in *Cagan*, "[i]n the absence of any justification for [the Firm's] lengthy delay, . . . the trial court acted within its discretion in drawing an inference of prejudice from the delay itself." *Id.*[20]

### B. The Circuit Court Properly Dismissed The Firm's Suit Against The BIO Defendants For Failure To State A Claim.

The circuit court dismissed the Firm's cause of action against the BIO Defendants for "professional negligence and legal malpractice" after finding that the complaint failed to state

---

[20] We recognize that the language of Rule 2-507(e) provides that when an action is dismissed for a violation of Rule 2-507, "the dismissal entered on the docket be 'without prejudice,'" *Hariri v. Dahne*, 412 Md. 674, 684 (2010) (holding dismissal with prejudice to be inappropriate under the circumstances because the statute of limitations on the original claim had not yet run at the time of dismissal). But although the Firm does not challenge the dismissal with prejudice on that ground, there are circumstances that warrant dismissal with prejudice, and this is such a case. In *Hariri*, we noted that dismissal with or without prejudice is "of no consequence" when the applicable statute of limitations period has long since concluded at the time of service:

> [*Cagan*] involved the dismissal of a negligence action asserted by the appellant, who was born on May 6, 1975, and—under the "coming of age rule" established in *Mason v. Board of Education*, 375 Md. 504, 514 (2003)—"attained 18 years of age" by May 5, 1993. That action was (1) filed by the appellant on May 3, 1996, (2) not served on the appellee until April 6, 1998, and (3) dismissed "with prejudice" on July 6, 1998. *Because the applicable statute of limitations had expired at the end of the day on May 5, 1996, it was of no consequence whether the dismissal was "with prejudice" or "without prejudice."*

*Id.* at 685-86 (emphasis added) (citing *Cagan*, 128 Md. App. 641). So even if the court had dismissed without prejudice, the Firm would have been barred by limitations from trying again in any event.

33

a claim upon which relief could be granted. Our standard of review on this posture is well-

understood:

> "In considering a motion to dismiss for failure to state a claim
> under Maryland Rule 2-322(b)(2), a court must assume the truth
> of all well-pleaded material facts and all inferences that can be
> drawn from them." *Rossaki v. NUS Corp.*, 116 Md. App. 11, 18
> (1997). The material facts setting forth the cause of action
> "'must be pleaded with sufficient specificity. Bald assertions
> and conclusory statements by the pleader will not suffice.'"
> *Adamson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 246
> (2000) (quoting *Bobo v. State*, 346 Md. 706, 708-09 (1997)).
>
> On appeal, we view the well-pleaded facts of the complaint "in
> the light most favorable to the appellant," *Parker v. Kowalsky &
> Hirschhorn, P.A.*, 124 Md. App. 447, 458 (1999), to determine
> whether the trial court was legally correct in dismissing the
> complaint. *Adamson*, 359 Md. at 246. "The grant of a motion
> to dismiss is proper [only] if the complaint does not disclose, on
> its face, a legally sufficient cause of action." *Rossaki*, 116 Md.
> App. at 18 (citation omitted).

*Tavakoli-Nouri v. State*, 139 Md. App. 716, 725 (2001).

It is, appropriately, not hard to withstand a motion to dismiss, but the complaint must

"contain a clear statement of facts necessary to constitute a cause of action and a demand for

judgment for the relief sought." Md. Rule 2-305. Both the complaint and first amended

complaint[21] raise one cause of action against the BIO Defendants—professional negligence

---

[21] There are few differences between the legal malpractice claims raised in the original
and amended complaint, so we refer to them together as the "complaint," and will only make
distinctions between the two versions when necessary.

and legal malpractice.[22]  To properly state a claim for legal malpractice, the Firm had to

allege facts to support a finding of "strict privity," which requires a showing of "'(1) the

attorney's employment, (2) [the attorney's] neglect of a reasonable duty, and (3) loss to the

client proximately caused by that neglect of duty.'" *Blondell v. Littlepage*, 185 Md. App. 123,

138 (2009) (quoting *Flaherty v. Weinberg*, 303 Md. 116, 128 (1985)).  At the risk of stating

the obvious, "to hold an attorney liable for legal malpractice, an attorney-client relationship

must exist between the parties."  *Ferguson v. Cramer*, 116 Md. App. 99, 112 (1997) (citing

*Cavacos v. Sarwar*, 313 Md. 248, 253 (1988)).  "[A] non-client third party, who may have

some other type of contractual relationship with the attorney, ordinarily is unable to maintain

a malpractice action as a matter of law because the attorney's professional obligations are

only to the client."  *Blondell*, 185 Md. App. at 138.  Therefore, a co-counsel relationship will

not suffice.  *Id.* at 140 (finding that the appellant could not prevail in an attorney malpractice

action against the appellee because it was co-counsel to, and not a client of, the appellee).[23]

---

[22] The amended complaint was filed over a year after the original complaint, but filing
was proper despite the delay.  Under Rule 2-341(a), "[a] party may file an amendment to a
pleading without leave of court by the date set forth in a scheduling order or, if there is no
scheduling order, no later than 30 days before a scheduled trial date."  Md. Rule 2-341.
Here, the circuit court neither issued a scheduling order nor set a trial date, so the filing of
the Amended Complaint complied with Rule 2-341(a).

[23] In *Blondell*, we rejected a party's claim for legal malpractice based in a co-counsel
relationship because that relationship did not satisfy the strict privity requirement:

> Blondell does not style his suit as an attorney malpractice action,
> *and indeed he could not because he was not a client of*
> *Littlepage*.  Rather, Blondell bases his claims on the co-counsel

(continued...)

35

The Firm has not pled any facts tending to show that it had anything more than a co-counsel, as opposed to an attorney-client, relationship with the BIO Defendants.[24] The record demonstrates that the Firm's client, Technical Furniture, had a matter before the USPTO Appeal Board and was required to "designate a lead counsel and a back-up counsel who can conduct business on behalf of the lead counsel." 37 C.F.R. § 42.10(a).[25] Ms. Tung, as the

_____

[23](...continued)

> relationship . . . . Nonetheless, the policy considerations underlying the strict privity requirement apply with equal force here. *Blondell's theory elevates co-counsel relationship to a special status, allowing associated attorneys to sue one another, seeking an affirmative recovery, as distinguished from contribution or indemnification when sued as alleged joint tortfeasors, on the basis of allegedly erroneous or improper legal advice given to the client.*

185 Md. App. at 140-41 (emphasis added).

[24] The Firm also admits in its brief that its representation of Technical Furniture was undertaken "jointly" with the BIO Defendants.

[25] In promulgating 37 C.F.R. § 42.10, the USPTO explained the role of back-up counsel:

> The [USPTO] expects that lead counsel will, and back-up counsel may, participate in all hearings and conference calls with the [USPTO Board of Appeals] and will sign all papers submitted in the proceeding. In addition, the role of back-up counsel is to conduct business with the [USPTO] on behalf of lead counsel when lead counsel is not available. Actions not conducted before the [USPTO] (e.g., taking of depositions) may be conducted by lead or back-up counsel.

Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48612, 48630 (Aug. 14, 2012) (to

(continued...)

Firm's attorney in charge of legal representation and filings before the USPTO, served as lead counsel for Technical Furniture, and the BIO Defendants were retained by the Firm to serve as backup counsel. So for this claim to survive, the Firm would need to plead an attorney-client relationship between the Firm and the BIO Defendants. But at most, the BIO Defendants' professional duties flowed to Technical Furniture, the *joint* client of the BIO Defendants and the Firm. We agree, therefore, that the Firm cannot state a claim for legal malpractice claim against the BIO Defendants.[26]

## C. The Firm Did Not Preserve Its Arguments Relating To Judicial Bias And The Appearance Of Impropriety.

*Finally*, the Firm argues for the first time on appeal that the special assignment of the case to a single judge gave the appearance of "impropriety, partiality, and prejudicial influence." It contends that impropriety arose from two sources: *first*, the letter Ms. Tung's counsel sent to Judge Davis-Loomis asking that the pending motions be specially assigned to one judge and the court's agreement to make such an assignment; and *second*, the mutual involvement of Judge Caroom (the judge to whom the case was specially assigned) and Ms. Tung's counsel in an event called Chambers Chat, a bench-bar event held monthly by the Anne Arundel County Bar Association. But the Firm did not challenge the special assignment

---

[25](...continued)
be codified at 37 C.F.R. pt. 42, cmt. 39).

[26] Beyond this, the allegations raised by the Firm in both the original and amended complaints regarding the BIO Defendants' purported breaches of their duties are conclusory at best.

or seek recusal of Judge Caroom below, and by failing to do so failed to preserve these issues for appellate review.

To initiate recusal procedures and preserve the recusal issue for appeal, "a party must file a timely motion" with the trial judge that the party seeks to recuse. *Miller v. Kirkpatrick*, 377 Md. 335, 358 (2003); *see also Surratt v. Prince George's County*, 320 Md. 439, 468 (1990) ("[I]n order to trigger the recusal procedure we here prescribe, a motion must be timely filed."). A timely motion is one that is "filed 'as soon as the basis for it becomes known and relevant,'" *Miller*, 377 Md. at 358 (quoting *Surratt*, 320 Md. at 469), and "is not one that represents 'the possible withholding of a recusal motion as a weapon to use only in the event of some unfavorable ruling.'" *Id.* Therefore, "a litigant who fails to make a motion to recuse before a presiding judge in circuit court . . . waiv[es] the objection on appeal." *Halici v. City of Gaithersburg*, 180 Md. App. 238, 255 n.6 (2008) (citing *Miller*, 377 Md. at 358); *see also* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court."); *compare Traverso v. State*, 83 Md. App. 389, 394 (1990) (finding that "no issue concerning the recusal [of the trial judge] has been preserved for [appellate review]" because the appellant "never asked the trial judge to recuse himself"), *with Miles v. State*, 88 Md. App. 360, 368 (1991) (finding the filing of an affidavit to the circuit court asserting bias and prejudice of a trial judge to be "sufficient to preserve the recusal issue").

At the January 18, 2013 hearing, after the case was specially assigned to Judge Caroom, the Firm had an opportunity to challenge the assignment and to have Judge Caroom recused.  The Firm declined to do so:

> [THE COURT:] Let me add one other thing, which is that normally the Court would expect a reconsideration to be considered by the same judge who issued the order; however, subsequent to those orders being passed the case was specially assigned to me.
>
> I then contacted the administrative judge and Judge Goetzke to discuss that question of who should rule on a motion to reconsider after the special assignment to a different judge.  And the consensus that the Court got was that I should rule on them and that Judge Goetzke had no objection by ruling on them.
>
> So I am prepared to do that unless counsel wish to argue that we should sort of unassign the case in terms of the special assignment.  *Does anyone want to make that request, which would have to be directed to the administrative judge, or are we ready to go forward with that motion today if need be.*

(Emphasis added.)  We decline the Firm's invitation that we remand the case and "require that the case be set with a different circuit court judge chosen randomly in accordance with the court's standard procedure" when the circuit court never had the opportunity to consider and decide this fact-specific and discretionary question in the first instance.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

39